**In the Matter of Ira B. ZINMAN.**

No. 981S256.

Supreme Court of Indiana.

July 13, 1983.

Claudia Carroll, Bloomington, for respondent.

Thomas J. Opsut, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This matter is before this Court on a Verified Complaint for Disciplinary Action filed by the Indiana Supreme Court Disciplinary Commission charging the Respondent with engaging in conduct involving a conflict of interest. The Hearing Officer appointed in this cause has completed his hearing and has submitted Special Findings of Facts and Conclusions of Law. The Respondent has petitioned for review and both parties have briefed their positions.

In his petition for review, the Respondent raises two preliminary objections which must be addressed at this point. First, Respondent asserts that the Hearing Officer lost jurisdiction by not filing his findings of fact and conclusions of law within thirty (30) days as required under Admission and Discipline Rule 23, Section 14(f). Second, Respondent asserts that the Hearing Officer, by accepting verbatim the tendered findings of the Disciplinary Commission, did not enter his own findings of fact as required.

Respondent's first contention is unacceptable in two particulars. This Court has never held that the expiration of the specified time periods under Admission and Discipline Rule 23 is jurisdictional. On the contrary, we have noted that expiration of such time periods, without a further showing of impairment to the fundamental fairness of the proceeding, does not establish a constitutional infirmity. *In re Wireman*, (1977) 270 Ind. 344, 367 N.E.2d 1368, cert. denied 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402. Additionally, the record in this case demonstrates that at the conclusion of the testimonial portion of the hearing, the Hearing Officer granted the parties twenty days in which to tender proposed findings and memoranda. The Hearing Officer's findings were filed with this Court

twenty-four (24) days after these matters were tendered by the parties. Accordingly, we now find that the Hearing Officer complied with Admission and Discipline Rule 23, Section 14(f).

■ This Court further finds Respondent's objection to the Hearing Officer's adoption of the tendered findings of the Disciplinary Commission to be similarly without merit. Both parties had an opportunity to present evidence and argue the merits of their respective positions. It is not error to be persuaded by one party. When the Hearing Officer signed the tendered findings, they became his findings which are now subject to the review of this Court.

Turning to the findings of fact, Respondent asserts in his petition for review that several of the findings of the Hearing Officer are erroneous. These allegations of error are resolved through our ultimate determination of the facts. Our findings are arrived at through an examination of all matters before the Courts including the transcript; the findings of the Hearing officers are considered, but are not controlling. *In re Callahan,* (1982) Ind., 442 N.E.2d 1092; *In re Crumpacker,* (1978) 269 Ind. 630, 383 N.E.2d 36; *In re Wireman,* (1977) Supra. Respondent's assertion of error has been considered in this review process.

Upon examination and review of all matters which have been filed under this cause, this Court now finds that the Respondent, Ira B. Zinman, is a member of the Bar of the State of Indiana and presently maintains an office for the practice of law in Bloomington, Indiana.

In 1979, the Respondent represented Heather L. McCain in her dissolution of marriage action against her husband, Chris W. Moon, in the Monroe Superior Court. A decree of dissolution, including a custody provision for the parties' minor child, was entered on May 17, 1979. Heather McCain was awarded custody, with Chris Moon having certain visitation rights and support obligations.

Thereafter, during 1979 and 1980, McCain called the Respondent on several occasions to complain concerning late support payments and, on one particular occasion, concerning threats to stop support. In response thereto, the Respondent's associate wrote a letter advising McCain that they would contact Moon if she would retain them and forward a retainer of $30.00. McCain did not do so. McCain did call with a question concerning visitation and was charged $6.50 for said consultation. In another instance, the Respondent provided information to McCain concerning a financial matter he had previously handled for her. During 1980 the Respondent and his associate advised McCain to seek legal assistance from the Legal Aid Society because of McCain's financial inability to pay for private counsel.

In May, 1981, the Respondent accepted employment on behalf of Chris Moon and Moon's mother, Marcelle Allen, to seek modification of the May 17, 1979, dissolution decree in respect to the grandmother's visitation. On May 18, 1981, the Respondent wrote a letter on behalf of Moon and his mother to McCain seeking her agreement to a modification of the visitation provisions of the dissolution decree and advising her that he would be filing a petition to modify if he did not hear from her within ten days. On June 3, 1981, the Respondent filed a petition for modification on behalf of both Moon and his mother. On June 11, 1981, Respondent filed a petition for visitation by a grandparent, and the earlier petition was subsequently dismissed. On July 28, 1981, McCain's attorney filed a motion seeking the Respondent's disqualification; and, on July 29, 1981, the Respondent filed a petition to withdraw, which was granted.

Anticipating findings along the lines set forth above, Respondent contends that there is no violation of the *Code of Professional Responsibility* as charged under the Verified Complaint filed in this cause, that being Disciplinary Rules 5–105(A) and 1–102(A)(5) and (6) which read, respectively, as follows:

"A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C)."

"A lawyer shall not:

.    .    .    .    .

(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

In support of this contention, Respondent asserts that McCain was not a client at the time Respondent accepted employment on behalf of Moon and Allen, that it is unclear whether the prohibition of Disciplinary Rule 5–105(A) extends to a former client and that the second representation by the Respondent did not touch upon confidential information or involve a substantial relationship to the previous representation.

■ We find the contention of Respondent unpersuasive. In a parallel consideration, this Court has addressed disqualification by reason of Canons 4, 5 and 6 of the *Code of Professional Responsibility.*

The precise issue raised here has not been previously decided in this state and deserves a careful two-step analysis. First, we must decide whether the prosecuting attorney was properly disqualified under the facts of this case. It is axiomatic that the conduct of all attorneys in this state, whether employed in the public or private sector, is governed by the Code of Professional Responsibility. The precepts of professional ethics forbid the participation of a lawyer in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith. Canons 4, 5, and 6, Indiana Code of Professional Responsibility. *Walker v. State,* (1980) Ind.App., 401 N.E.2d 795; *Branan v. State,* (1974) 161 Ind.App. 443, 316

N.E.2d 406; *Wilson v. State,* (1861) 16 Ind. 392.

The test, stated alternatively in many jurisdictions, is that a lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. *Osborn v. District Court,* (1980) Colo., 619 P.2d 41; *State v. Jones,* (1980) 180 Conn. 443, 429 A.2d 936; *Schloetter v. Railoc of Indiana, Inc.,* (7th Cir.1976) 546 F.2d 706. This test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith. *State ex rel. Meyers v. Tippecanoe County Court,* (1982) Ind., 432 N.E.2d 1377. Our analysis of such question necessarily included the determination that Disciplinary Rule 5–105(A) applies to the interests of former clients as well as present clients. As found in the *Meyers Case,* Supra., an attorney contravenes the Code when he represents a party in a controversy that is substantially related to a matter in which the lawyer previously represented another client.

In the present case, Respondent represented Heather McCain in her dissolution of marriage. This former client was awarded custody of a minor child under the dissolution decree entered. Two years later, Respondent, representing the former husband and mother-in-law, sought to modify this decree as to visitation for the minor child's grandmother.

■ It is this Court's conclusion that Respondent's second representation was substantially related to the initial controversy and, therefore, prohibited. In view of this conclusion, this Court now finds that the Respondent violated the *Code of Professional Responsibility* as charged under the verified complaint.

Having found misconduct, as set out above, an appropriate sanction must be imposed. In this determination, as in the finding of facts, all matters before the Court are considered. This includes matters in extenuation and mitigation as well

as aggravation which can be demonstrated by the record. In this regard, the arguments of Respondent relating to mitigating circumstances have been considered where predicated on matters of record.

The proper functioning of our advocatory legal system hinges on the attorney-client relationship. A client has every reason to assume and trust that an attorney will provide professional services, maintain confidences, and perform with fidelity when employed in a professional capacity. The professional judgments of a lawyer must be free of compromising influences and loyalties. These ideals of professionalism underlie the limitations set out in our disciplinary rules, and it is in this regard that the Respondent has failed to meet expected levels of performance.

The conduct noted in this case, however, does appear to be an isolated incident in an otherwise unblemished career. The acts of Respondent do not appear to be motivated by self-interests or an intent to deliberately harm his client. Simply stated, it appears that the Respondent mistakenly thought he could provide the representation requested; we have found that he was wrong.

In view of the above considerations, by reason of the violation of the *Code of Professional Responsibility* set forth above, we find that the Respondent should be, and he hereby is publicly reprimanded and admonished.

Costs of this proceeding are assessed against the Respondent.