**Don Lee SHUTTLEWORTH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–1282A373.**

Court of Appeals of Indiana, Fourth District.

Oct. 31, 1984.

Rehearing Denied Dec. 7, 1984.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Barbara Shuttleworth swore to an information charging her ex-husband, Don Lee Shuttleworth, with the criminal nonsupport of his dependent children (IND.CODE 35–46–1–5(a), class D felony). A jury found him guilty as charged, and the trial court sentenced him to the custody of the depart-

ment of corrections for a term of three years. Shuttleworth raised several issues, attacking the verdict on various grounds (error in admission of evidence, improper sentencing procedure, location of witnesses, insufficiency of the evidence) and fundamental error with respect to an alleged improper conflict of interest in the prosecution herein. We find no reversible error and affirm Shuttleworth's conviction.

## ISSUES

1. Was it error to admit into evidence court records of support payments which Shuttleworth alleges were incomplete?

2. Was Shuttleworth afforded a fair and complete trial because he was unable to locate certain witnesses?

3. Was the jury's verdict contrary to law as being supported by insufficient evidence?

4. Did the trial court err by using an incomplete presentencing report to assess Shuttleworth's sentence?

5. Was it fundamental error for an attorney to act as prosecutor of Shuttleworth's case when he had represented Mrs. Shuttleworth in the divorce proceeding five and a half years earlier?

## FACTS

The evidence most favorable to the verdict reveals Mrs. Shuttleworth was divorced from Shuttleworth in April, 1975, with the court decreeing he pay $60 per week support to the couple's four dependent children. Shuttleworth did not appear for the final hearing (although he had been involved in the proceedings) but does not deny he was aware of the terms of the child support provisions in the decree. In November of that same year, Mrs. Shuttleworth brought contempt proceedings against Shuttleworth for failure to pay support. Payment of an agreed $250 cured the contempt. In June, 1976, Shuttleworth was again cited for contempt for which he paid $200 in August. A third contempt proceeding was initiated in June, 1980, but evidently no further court action was taken until Mrs. Shuttleworth swore to an information, alleging criminal nonsupport, in January, 1981. At no time was the support order ever changed, nor did Shuttleworth seek the same.

At trial, the State presented · evidence that Shuttleworth was in arrears for more than $12,000. Mrs. Shuttleworth testified that her husband only paid for a few groceries in addition to the court's record and the contempt payments. Mrs. Shuttleworth further testified that her husband had never really held down a steady job but was dextrous with his hands and was a good carpenter and mechanic.

There is no dispute that Shuttleworth's recent employments were confined to tree-trimming, helter-skelter carpentry, and an odd job here and there. As a result, his annual income after the divorce was rarely more than $4000 and was generally less. Shuttleworth contends he suffered a nervous breakdown prior to his divorce (a fact his wife denied) and that his subsequent and untreated condition prevents him from holding a regular job. However, he also testified that since 1975, he probably applied for no more than a dozen jobs, of which he followed up on only two or three, and that, in fact, he never actively pursued tree-trimming assignments but waited to be sought out. After the jury heard these presentations, they found Shuttleworth guilty of nonsupport of a dependent.

At the time of the divorce, Mrs. Shuttleworth was represented by one John Branham. The record in this cause does not reveal whether attorney Branham represented her during the 1975, 1976, and 1980 contempt proceedings, but it does positively show that as of February, 1981, he was the county prosecutor, actively pursued the State's case against Shuttleworth and actually tried the case. At no time during trial did Shuttleworth register any objection to attorney Branham's role in the case, but here on appeal, he asserts prosecutorial conflict of interest as error, in addition to errors at trial and sentencing.

## DECISION

### Admission of Evidence

At trial, the State offered into evidence an exhibit as a certified copy of the support docket from the Shuttleworth divorce. Counsel stated he had no objection to the evidence, and the court duly admitted it. At the hearing on Shuttleworth's motion to correct error, counsel contended the State had failed to present the portion of the docket showing Shuttleworth's 1975 support payments and argues on appeal that it was prosecutorial misconduct to omit that page of the docket. We fail to find error here.

■ Nowhere has Shuttleworth provided us with any indication whatsoever that any such docket information exists. The record shows that a 1976 docket was entered at trial, Shuttleworth's counsel confessed at the hearing that he could not find the particular page at issue: "I really have no evidence to show, but I had and have a strong feeling that there is a 1975 support docket." Record, p. 174. Under these circumstances, we cannot find error in the admission of evidence simply because Shuttleworth thinks it was incomplete. In the absence of objection and of a clearer specification of error, the issue is waived. *See Riley v. State*, (1981) Ind., 427 N.E.2d 1074.[1]

### Witnesses

■ In his motion to correct error, Shuttleworth complains he was not afforded a fair and complete trial because he had been unable to locate two witnesses for his defense, Scott Jarvis and Reverend Stan Hill. Shuttleworth was not able to locate either witness for trial but never requested a continuance thereof. At the hearing on the motion to correct error, defense counsel still had not been able to locate the two men. We see no action by the trial court upon which to predicate any claim of error when the matter was never brought to its attention at any of the trial proceedings. Shuttleworth's contentions to the contrary must fail. *See, e.g., Engle v. State*, (1984) Ind., 467 N.E.2d 712 (grounds for continuance to compel attendance of out-of-state witness not presented to trial judge).

### Verdict

■ Shuttleworth next argues the jury's verdict was contrary to law as unsupported by sufficient evidence. In reviewing such claim, we can only consider the evidence favorable to the verdict and all reasonable inferences drawn therefrom. We cannot supplant the jury's assessment of witnesses' credibility nor its weighing of the evidence. If there is substantial evidence of probative value supporting the jury's verdict, we cannot but find its decision in accordance with the law. *Collins v. State*, (1977) 266 Ind. 430, 364 N.E.2d 750. We so find here.

In challenging the sufficiency of the evidence, Shuttleworth sets forth arguments which he believes should relieve him of conviction. He contends there was a computational error in the amount of arrearages. Notably, he does not argue there was no arrearage at all. He also argues that only one dependent child resided with Mrs. Shuttleworth at the time charges were brought, and therefore, the jury's verdict based on a charging information including all four children was error. His major defensive argument is that his recurring mental illness prevented him from working. Shuttleworth's arguments are to no avail.

When the information for criminal nonsupport was actually filed in February, 1981, the relevant criminal statute was IND.CODE 35-46-1-5:

"(a) A person who knowingly or intentionally fails to provide support to his dependent child commits nonsupport of a child, a Class D felony.

\*    \*    \*    \*    \*    \*

1. Regardless of whether a 1975 docket sheet existed, such evidence would have been largely irrelevant because, as we explain later, the statute under which Shuttleworth was convicted did not go into effect until 1978.

"(d) It is a defense that the accused person was unable to provide support."

This section became effective in July 1, 1978. 1978 Ind.Acts, P.L. 144 § 9. Because of the continuing nature of the offense of nonsupport, Shuttleworth was in violation of the statute from that time until the date of prosecution. We are aware that the information recites the offense was "committed" December 15, 1980. A realistic interpretation of the offense leads us to conclude that any efforts by Shuttleworth to limit the ramifications of the crime to that day are unavailing (such as arguing only one dependent was residing with Mrs. Shuttleworth on that day). Thus, we must determine whether, since July 1, 1978, Shuttleworth (1) knowingly or intentionally (2) failed to support (3) any of his dependent children.

There is no doubt that the evidence before the jury clearly shows nothing but very minimal payments for groceries, if that, from July, 1978, through December, 1980, for the support of his children. (To remind Shuttleworth of our standard of review, the jury was not compelled to believe his testimony of other payments or provision of supplies in kind.) Testimony also revealed that three of his children resided with Mrs. Shuttleworth in 1978 and were dependent, under the age of eighteen and presumably unemancipated. *See* IND. CODE 35–46–1–1 (amended 1984 Ind.Acts, P.L. 185 § 2).[2] By the time the instant charges were brought, at least one dependent child remained. It is quite apparent that Shuttleworth was responsible for a minimum of one dependent child at some period of the charged offense. Our question then is whether the jury could have found Shuttleworth's behavior was knowing or intentional.

Shuttleworth argues that the jury was required to find his failure to support was willful. He premises this argument on our opinion in *Burris v. State*, (1978) 178 Ind. App. 327, 382 N.E.2d 963. However, that case was an appeal from a prosecution under IND.CODE 35–14–5–2 (1976) which has since been repealed. Similarly, *Hudson v. State*, (1977) 175 Ind.App. 237, 370 N.E.2d 983, relied on the construction of IND.CODE 35–14–4–1 (1976), also repealed. Both these statutes specifically required a finding that a party had *willfully* neglected to provide support. Such is not the case here. Instead, we must determine if Shuttleworth *knowingly* or *intentionally* failed to provide support for two and a half years.

■ These two categories of culpability are defined in IND.CODE 35–41–2–2 as follows:

"(a) A person engages in conduct 'intentionally if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

There is no doubt there was substantial evidence for the jury to find Shuttleworth knowingly or intentionally failed to properly support his children. Shuttleworth admits he knew the terms of the support provisions and, in fact, had appeared at least twice to face charges for contempt with regard to his failure to pay. There is also no dispute that he made some efforts, minimal though they were, to provide for his children. Such efforts simply were not of sufficient magnitude to be called support, and he knew it.[3] He simply refused to either provide more or to even come near to complying with the court order. The jury had a proper basis for finding Shuttle-

---

2. "Emancipation" means "to free a child for all period of its minority, from care, custody, control and service ...." *Allen v. Arthur*, (1966) 139 Ind.App. 460, 220 N.E.2d 658, 660. Whether a child has been emancipated is a question of fact and is never presumed. If Shuttleworth intended to refute the dependency of any of his children, it was incumbent upon him to present relevant and competent evidence thereof. *Id.*

3. For this reason, Shuttleworth's arguments that the amount of arrearages is inaccurate is irrelevant. The arrearages existed, and the trivial amounts actually paid could not even approach any meaningful level of support.

worth knowingly or intentionally failed to support his dependent children. *See State v. Yocum*, (1914) 182 Ind. 478, 106 N.E. 705.

Shuttleworth attempted to counter the State's charges by erecting the defense that he was unable to provide support. *See* I.C. 35–46–1–5(d). The evidence so presented was that he had suffered a nervous breakdown before his divorce and that the continuing (although untreated) malady prevented undertaking full-time employment. He testified his condition was a spiritual matter for which he relied upon the laying on of hands for relief. Mrs. Shuttleworth testified she knew of no such breakdown and declared that her husband's employment patterns had always been catch-as-catch-can. It was within the jury's province to disbelieve Shuttleworth's testimony and ignore his defensive gestures. The evidence presents more the picture of a man who refused to take upon himself the adult responsibility for the lives he brought into this world rather than of a man who is incapacitated from doing so. Even were we to believe he truly has this nervous condition as he claims, all we know from the record is that he cannot do carpentry work as a result. He is qualified to pursue other employment; he simply did not do so. The jury was well within its bounds when it rendered its verdict, and we find that verdict was not contrary to law.

*Sentencing*

Shuttleworth alleges that he was improperly sentenced because of the introduction into evidence of an incomplete presentence report. He argues that the neutrality of the report in his case was endangered by the absence of a complete support docket sheet and of two letters which would have reflected upon positive aspects of Shuttleworth's character. After examining the record and reviewing Shuttleworth's contentions, we find no error.

■ It is an indisputable principle of sentencing procedures that a presentence report should theoretically be a neutral document issued by the county probation department. *Gardner v. State*, (1979) 270 Ind. 627, 388 N.E.2d 513. The statements therein are presumptively true unless challenged by the defendant, *id.*, thus, he is given the opportunity to review the report and to controvert the material contained in it. IND.CODE 35–4.1–4–13 (1982) (current version IND.CODE 35–38–1–12). Shuttleworth did object at the sentencing hearing to the incompleteness of the docket records attached to the presentence report. He claimed the 1976 payments, which had been entered into evidence at trial, were missing. It appears, however, that the trial judge may have seen that particular page:

"MR. GARRETT [DEFENSE COUNSEL]: ... It does not list docket sheet, page two, which I have a copy of, that also covers the period of time in question here. And it is for a period of 1976. *I can best do it by showing you*—Maybe my presentence is not complete. This is the only docket sheet page that I show. These are just my own notes in evidence as it was introduced."

Record, p. 140. Regardless, we fail to see how a 1976 docket sheet would be material to the sentencing here for a crime which, by our interpretation of the statute, could not have been committed until 1978. In fact, the aggravation of Shuttleworth's sentence was not based upon his arrearages but was specifically based upon his utter disregard for the court's power to enforce the support order vis a vis the several contempt proceedings and his persistent failure to appear in court. We find no cause for resentencing here.

■ As for the two letters which Shuttleworth contends were improperly omitted from the presentence report, Shuttleworth failed to bring their absence to the court's attention. Again, it was Shuttleworth's responsibility to bring this testimony forward. However, there is also testimony in the record that the trial judge did indeed have the letters in his possession:

"MR. GARRETT: ... I think—I want the Court to also understand that—I think there were a couple of other letters that were sent into the Court—

COURT: Yes, I have them. Right.

MR. GARRETT—from other people that were not included. This is sort of out of order, but it popped up here. I don't know if those should have been included in the Presentence investigation."

Record, p. 145. In addition, IND.CODE 35–4.1–4–12 (1982) (current version IND. CODE 35–38–1–11) provided Shuttleworth with the vehicle for filing these letters with the court, prior to sentencing, in conjunction with written memoranda. Again, we have found no cause to remand for a new sentencing hearing.

*Prosecutorial Conflict of Interest*

Shuttleworth lastly argues his cause should be reversed because attorney Branham's actions in representing his ex-wife in a civil action then prosecuting in the name of the State in a related criminal case constituted error. Because he failed to object at trial to attorney Branham's participation, Shuttleworth must rely on the doctrine of fundamental error in order to avoid having waived the issue. *See Young v. State*, (1967) 249 Ind. 286, 231 N.E.2d 797. However, we need not reach this portion of his argument because we find no error.

In reviewing the record we note it reveals on this issue only that attorney Branham represented Mrs. Shuttleworth in the dissolution action in April, 1975. The instant criminal action was not begun until January, 1981, five and a half years after the divorce decree. There is no evidence in the record, nor does Shuttleworth's appellate brief suggest, that the dissolution was a bitterly contested, adversarial action rather than a routine divorce case. We comment at this point that, due to Indiana's statutory scheme for such actions, divorces are brought in the form of no-fault actions. Particularly when no large estate is at stake, these cases are no more than routine, and the fact that custody and support are involved does not necessarily alter the action's complexion. *See, e.g., Herron v. Herron*, (1983) Ind.App., 457 N.E.2d 564 (where we have approved the use of a schedule for fixing annual support). In sum, the case here indicates no more than a brief intertwining of attorney Branham's civil practice and the Shuttleworth divorce.

Before progressing further, we must point out to both the state and Shuttleworth that we are not concerned here with an ethical breach of confidentiality as they have both argued. The cases they have cited to us concern the condemnation of attorneys who have at one time or another represented both parties to a civil suit and of prosecutors who are involved in the criminal prosecutions against former clients, where in each instance the attorney might possess information to which he was made privy by reason of the parties or the criminal defendant. *See, e.g., In re Zinman*, (1983) Ind., 450 N.E.2d 1000; *State ex rel. Meyers v. Tippecanoe County Court*, (1982) Ind., 432 N.E.2d 1377; *Fadell v. State*, (1983) Ind.App., 450 N.E.2d 109; *Branan v. State*, (1974) 161 Ind.App. 443, 316 N.E.2d 406. The facts of this case instead present a scenario where a prosecuting attorney tries a criminal defendant upon charges arising from the same controversy in which such attorney was the representative of the criminal complainant in related civil proceedings. We are thus dealing with a question of attorney Branham's conflict of interest between his earlier civil representation and his current prosecution in the name of the state.

Within this context it is essential, indeed it is imperative, that a prosecutor remain impartial in fulfilling his role as a sworn officer of the court to see that justice is done. *See United States v. Hogan*, (2d Cir.1983) 712 F.2d 757. He must not allow his professional judgment to be compromised (*Matter of Lantz*, (1982) Ind., 442 N.E.2d 989) because his office, as prosecutor in the name of the public, "is not so much to convict as it is to achieve a just result." *People v. Zimmer*, (1980) 51 N.Y.2d 390, 393, 434 N.Y.S.2d 206, 207, 414 N.E.2d 705, 707; *United States v. Hogan*, *supra; Wright v. United States*, (2d Cir. 1984) 732 F.2d 1048; *United States v. Heldt*, (D.C.Cir.1981) 668 F.2d 1238, *cert. denied* (1982) *Hubbard v. United States*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d

440. Thus, a prosecutor must "represent public justice and stand indifferent as between the accused and any private interest." *People v. Gerold,* (1914) 265 Ill. 448, 107 N.E. 165, 177; *Commonwealth v. Tabor,* (1978) 376 Mass. 811, 384 N.E.2d 190. In other words, an attorney's private employment must not influence his prosecutorial decision whether or not to bring criminal charges based upon the same set of facts available in the civil case. *People ex rel. Carey v. Lincoln Towing Service, Inc.,* (1976) 40 Ill.App.3d 126, 351 N.E.2d 342 (prosecutorial employment regulated by statute).

Not only are the courts concerned for the due process rights of a criminal defendant, but it also becomes a professional and ethical matter for attorneys in general. As our Code of Professional Responsibility declares:

> "The responsibility of public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts."

Ethical Consideration 7–13; *cf Foster v. Pearcy,* (1979) 270 Ind. 533, 387 N.E.2d 446, *cert. denied* (1980) 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (absolute immunity of prosecutors does not shield them from disciplinary process actionable under E.C. 7–13). A statutory prohibition is also present in Indiana:

"It shall be the duty of an attorney:

  *    *    *    *    *    *

Seventh. Not to encourage either the commencement or the continuance of an action or proceeding from any motive of passion or interest."

IND.CODE 34–1–60–4. We thus are persuaded that Indiana authority supports the general policy that a prosecutor should not be swayed in the function of his office by considerations arising from his prior employment.

Adhering to this principle does not require a finding of actual abuse of a prosecutor's public mandate. The concern is to avoid any appearance of impropriety in the administration of criminal justice.

> "Courts owe a duty to themselves, to the public, and to the legal profession. The due and orderly administration of justice, the honor of the legal profession, and the dignity of the court forbid such practice. The attorney must not transgress, and the court must not permit it to be done. An observance of the rule will prevent the dishonest practitioner from fraudulent conduct and will prevent the honest practitioner from putting himself in a questionable position."

*Ward v. State,* (1926) 33 Okla.Cr. 182, 184, 242 P. 575, 576. However, this principle is not without its limits.

▪ Our supreme court has set the following standard for determining when an attorney should be disqualified from a case: "a lawyer must be disqualified if it is shown that the controversy involved in the pending case is *substantially* related to a matter in which the lawyer previously represented another client." *State ex rel Meyers v. Tippecanoe County Court, supra,* 432 N.E.2d 1377, 1378 (emphasis added); *In re Colestock,* (1984) Ind., 461 N.E.2d 137.[4] We do not hesitate to deem attorney Branham's divorce case and the prosecution here to be related cases, relying on "related" as having the broad meaning of

---

**4.** In *State ex rel. Meyers v. Tippecanoe County Court,* (1982) Ind., 432 N.E.2d 1377, the supreme court upheld the disqualification of the county prosecutor, who had earlier represented the defendant upon two charges which formed the basis of habitual offender charges in the instant case. In *In re Colestock,* (1984) Ind., 461 N.E.2d 137, an attorney was suspended from the practice of law for representing adverse parties in related domestic proceedings.

"being connected by reason of an established or discoverable relationship." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1916 (1976) (definition of "related"). We cannot go so far, however, to deem them *substantially* related. Five and a half years had elapsed between the date of the divorce decree and Shuttleworth's prosecution for nonsupport. There is an absence of any evidence in the record that attorney Branham's interest in the civil case continued thereafter (*e.g.,* by instituting the intervening contempt citations) or that perhaps there existed some occurrence in the dissolution which caused Branham to retain a special or unique interest compelling him to pursue enforcement of an otherwise routine divorce case. It is difficult for us to visualize any appearance of impropriety arising therefrom. The criminal prosecution is much too attenuated for us to believe any conflict of interest in a civil matter could have motivated attorney Branham to pursue the criminal charges herein. In other words, we do not see how such a remote connection as gleaned from the record would motivate attorney Branham to prosecute this case or would influence his judgment so as to distinguish this case from any similar nonsupport case. The remoteness in time and lack of other evidence in the record have dissipated any appearance of impropriety.

We do not deny the occasion may arise where a prosecutor must indeed be disqualified. It is clear that a prosecutor must not *simultaneously* prosecute a defendant and represent his victim in a civil suit. *See, e.g., Jordan v. Commonwealth,* (1963) Ky. App., 371 S.W.2d 632; *Commonwealth v. Tabor, supra,* 76 Mass. 811, 384 N.E.2d 190; *People v. Zimmer, supra,* 51 N.Y.2d 390, 434 N.Y.S.2d 206, 414 N.E.2d 705. There is also a problem when a prosecutor must withdraw his appearance from a civil case because he is prosecuting the related criminal case. *See Davenport v. State,* (1981) 157 Ga.App., 704, 278 S.E.2d 440. These situations simply do not exist here. There was no error.

Affirmed.

CONOVER and YOUNG, JJ., concur.