STATE of Indiana, Appellant (Plaintiff Below),

v.

Sean ROMERO, a/k/a Sean German, Appellee (Defendant Below).

No. 45S04–9110–CR–783.

Supreme Court of Indiana.

Oct. 3, 1991.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

No appearance for appellee.

SHEPARD, Chief Justice.

After his first trial in Lake Superior Court ended in a hung jury, appellee Sean Romero employed a former Lake County deputy prosecutor as his counsel. The State's objection to the former prosecutor's appearance as defense counsel was overruled, and Romero was acquitted in a second jury trial. The State appealed on reserved questions of law and the Court of Appeals affirmed. *State v. Romero* (1990), Ind.App., 563 N.E.2d 134.

The State seeks transfer on two issues, the former deputy prosecutor's representation of Romero and the admissibility of expert testimony about reconstructive memory. Because this represents our first opportunity to explore Rule 1.11 of the Indiana Rules of Professional Conduct, we grant transfer to examine whether the former deputy should have been permitted to represent Romero. We conclude that the State's objection should have been sustained.

### History of the Case

Sean Romero was charged on April 17, 1989, with murder, Ind.Code § 35–42–1–1, and attempted murder, a class A felony, Ind.Code § 35–41–5–1 (West 1986). While preparing for the September 1989 trial, deputy prosecutor Samuel Cappas on several occasions sought the advice of deputy prosecutor Thomas Vanes, the office's supervising attorney for felony review.[1] Cappas and Vanes discussed the following evidentiary matters: 1) the admissibility of a section of the skull of a shooting victim; 2) the admissibility, on redirect examination, of a pretrial statement given by a

witness impeached on cross-examination; and 3) the admissibility of the testimony of a psychologist regarding memory loss suffered by the victim of a gunshot injury to the head.[2]

The case was tried before a jury September 5–9, 1989. The trial court declared a mistrial when the jury was unable to reach a verdict. The court set a new trial date of October 23, 1989, and Romero's attorney withdrew.

On or about September 15, 1989, Vanes left the employ of the Lake County Prosecutor for the private practice of law. On October 3, 1989, Vanes entered his appearance as attorney for Romero.

Cappas, as the deputy prosecutor still assigned to the case, objected to Vanes' appearance. After holding a hearing, the trial court overruled the State's objection. The State again objected to Vanes' appearance in a written motion filed October 20, 1989, and renewed its motion in open court when the second trial commenced on October 23, 1989. The trial court overruled these objections, and the trial proceeded with Vanes as Romero's attorney. Romero was found not guilty on all counts.

### Analysis

The State seeks appellate review on reserved questions of law pursuant to Indiana Code § 35–38–4–2(4) (West 1986). The State contends that Vanes' representation of Romero presented an appearance of impropriety (if not a violation of the Rules of Professional Conduct) sufficient to have merited his disqualification upon the State's motion. The applicable rule, in pertinent part, is:

Successive Government and Private Employment.—

(a) Except as law may otherwise expressly permit, a lawyer shall not repre-

---

[1]. Vanes filed an affidavit with the trial court when he entered his appearance for Romero. It stated that, as supervising attorney for felony review in the Lake County Prosecutor's Office, he was responsible for screening and filing incoming felony cases, but that he had no express supervising authority over deputy prosecuting attorneys handling trials.

[2]. The subject matter of the conversations between Cappas and Vanes is not in dispute. Indeed, these topics were listed in the affidavit which Vanes filed upon entering his appearance for Romero.

sent a private client in connection with a matter in which the lawyer *participated personally and substantially* as a public officer or employee, *unless the appropriate government agency consents after consultation.*

Ind. Professional Conduct Rule 1.11 (West 1987) (emphasis added).

While Indiana's appellate courts have reviewed a variety of attorney conflict of interest cases, none of these cases is precisely on point with the facts we encounter today. They nonetheless provide some guidance on the principles by which such conflicts should be resolved.

In *Matter of Brodeur* (1985), Ind., 479 N.E.2d 57, this Court reprimanded and admonished a former prosecutor for violating Disciplinary Rule 9–101(B) of the Code of Professional Responsibility for Attorneys at Law.[3] Brodeur was a deputy prosecutor in July 1982 when he signed and caused to be filed a four-count information against Leonard Grubb and a one-count information against Michael Gallagher. Both men were charged as a result of a shooting incident which occurred at the Grubb residence. As deputy prosecutor, Brodeur represented the State at Grubb's arraignment, filed a response to the defendant's discovery notice, and conducted plea negotiations with Grubb's attorney. In December 1982, Brodeur left the prosecutor's office. In February 1983, he entered his appearance for Gallagher in the criminal case, and in May 1984, he filed a civil action against Grubb—on behalf of Gallagher—based on the same July 1982 shooting incident which was the subject of the criminal charges. In reprimanding Brodeur, this Court observed: "After a lawyer leaves public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety. E.C. 9–3."[4] *Id.* at 57.

In *Shuttleworth v. State* (1984), Ind. App., 469 N.E.2d 1210, the defendant was convicted in 1981 of criminal nonsupport of his dependent children. Defendant and his wife had been divorced in 1975. Attorney Branham represented Mrs. Shuttleworth in the divorce proceedings. In January 1981, after Branham had become county prosecutor, Mrs. Shuttleworth swore to an information alleging criminal nonsupport. As prosecutor, Branham tried the criminal nonsupport case against Shuttleworth. On appeal, Shuttleworth claimed prosecutorial conflict of interest as error. The Court of Appeals affirmed Shuttleworth's conviction, concluding that the 1975 divorce and 1981 criminal case, while related, were not *substantially* related so as to merit disqualification of the prosecutor. *Id.* at 1218. The *Shuttleworth* court quoted the Oklahoma Court of Criminal Appeals in describing the values at the heart of the rules on conflict:

> Courts owe a duty to themselves, to the public, and to the legal profession. The due and orderly administration of justice, the honor of the legal profession, and the dignity of the court forbid such practice. The attorney must not transgress, and the court must not permit it to be done. An observance of the rule will prevent the dishonest practitioner from fraudulent conduct and will prevent the honest practitioner from putting himself in a questionable position.

*Ward v. State,* 33 Okla.Cr. 182, 184, 242 P. 575, 576 (1926).

In *State ex rel. Meyers v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377, we upheld the disqualification of the county prosecutor, who had earlier represented the defendant upon two charges which formed the basis of the habitual offender charges in the instant case. Because the habitual offender charge was based on the same two prior theft cases in which the prosecutor was involved during

---

**3.** Disciplinary Rule 9–101(B) preceeded Prof. Cond.R. 1.11. DR 9–101(B) provided:
   A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

**4.** The old Code of Professional Responsibility contained aspirational statements called Ethical Considerations. The new Rules of Professional Conduct do not rely on the slippery notion of "appearance of impropriety."

his tenure as a public defender, this Court concluded that a substantial relationship was involved that merited disqualification. *Id.* at 1379. In support of this conclusion, we noted:

> Although it is true, that the fact of the defendant's prior convictions are a matter of public record, we cannot say without speculation that the prosecutor's knowledge of those prior cases will not actually result in prejudice to defendant. The public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification.

*Id.*

■ Applying Rule 1.11 and the principles enunciated in *Brodeur, Shuttleworth,* and *Meyers* to the instant case, we conclude that attorney Vanes should have been disqualified from representing Romero in his second trial. Rule 1.11 provides for disqualification in such circumstances unless the appropriate government agency consents after consultation. Clearly Vanes did not gain consent from the prosecutor. Deputy prosecutor Cappas objected to Vanes' appearance on three separate occasions.

The need for consent by the government agency does not arise, of course, unless an attorney's previous participation was personal and substantial. The decisions in *Brodeur, Shuttleworth* and *Meyers* are helpful in assessing whether Vanes' participation was both "personal" and "substantial."

Of these three cases, only *Brodeur* involved a former prosecutor who entered his appearance as defense counsel in a case in which he had participated as a prosecutor. While it cannot be said that Vanes' involvement in Romero's first trial was as substantial as Brodeur's participation, it is apparent that Vanes and Cappas consulted on significant issues which were likely to be matters of dispute at trial.

While *Meyers* involved the disqualification of a prosecutor who had previously represented the defendant (rather than the other way around) its teaching is nonetheless applicable to the instant case. Just

as we could not say without speculation in *Meyers* that the prosecutor's knowledge of the defendant's prior convictions would not actually result in prejudice to the defendant, the trial judge in this case could not say without speculation that Vanes' consultations with Cappas would not result in prejudice to the State. By the very nature of his discussions with Cappas regarding specific evidentiary questions, Vanes was allowed the opportunity to peer into the mind of the lawyer prosecuting his client. We think such breaches of the attorney-client privilege should be avoided.

Circumstances such as these work to undermine public confidence in the criminal justice system. While our system provides time-tested procedural and evidentiary rules to ensure fair trials for defendants, the general public and the victims of crime also have an interest in the even-handed administration of justice. Thus, as we said in *Meyers,* "the public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification." 432 N.E.2d at 1379.

The Supreme Court of New Jersey has reviewed similar cases involving former prosecutors. *See, e.g., In re Advisory Opinion on Professional Ethics No. 361,* 77 N.J. 199, 390 A.2d 118, 121 (1978). That court has ruled that an assistant county prosecutor may not represent a defendant in any matter in which he participated while in the prosecutor's office. Such a lawyer is barred if the lawyer participated in any aspect of investigation, trial preparation or trial. This strict interpretation of the disciplinary rules followed from the New Jersey court's previously stated concerns with the unacceptable appearance of possible impropriety to the general public. *See State v. Rizzo,* 69 N.J. 28, 350 A.2d 225 (1975); *In re Biederman,* 63 N.J. 396, 307 A.2d 595 (1973); N.J.Advisory Committee on Professional Ethics *Opinion 340,* 99 N.J.L.J. 610 (1976); *Opinion 276,* 96 N.J.L.J. 1461 (1973); and *Opinion 207,* 94 N.J.L.J. 451 (1971). The New Jersey court described well the value of the rules on conflict when it observed that "sometimes an attorney, guiltless in any actual sense,

nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice." *State v. Rizzo,* 69 N.J. at 30, 350 A.2d at 226.

Vanes should have been required to stand aside. Permitting him to represent Romero on retrial generates two sorts of evils. First, it would be quite human for the public to suspect that an alleged perpetrator got off because he hired someone with inside information. Second, it encourages criminal defendants to recruit counsel on those very grounds.

### Conclusion

The consultation described by the facts of this case constituted personal and substantial participation under Rule 1.11. Therefore, the trial court should have disqualified attorney Vanes.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.

DICKSON, Justice, concurring in denial of transfer.

In this case the defendant invites this Court to reexamine the depraved sexual instinct exception to the general rule prohibiting admission of evidence of other crimes previously committed by the defendant. This exception is rooted in part in presumptions about human behavior, particularly the assumption that depraved sexual behavior is significantly more likely to be repeated than other types of criminal conduct.

If there is to be reconsideration of this rule, it would be helpful for future parties' briefs to identify and discuss any relevant social science research literature. Because this is not the thrust of the present case, I concur with the decision to deny transfer.