**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**GLENDAL RHOTON**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GLENDAL RHOTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1311-PC-563 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-0809-PC-204910

October 8, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Glendal Rhoton, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief, raising the following issues for review: (1) whether Rhoton was denied the right to a fair post-conviction hearing; (2) whether Rhoton received ineffective assistance of trial counsel; and (3) whether Rhoton received ineffective assistance of appellate counsel. Concluding Rhoton's post-conviction proceedings were not fundamentally unfair and that the post-conviction court did not err in denying Rhoton's petition, we affirm.

## Facts and Procedural History

Many of the facts relevant to Rhoton's underlying convictions were previously set out by this court on direct appeal:

> Late in the evening of September 2, 2008, Kimberly Philpot drove Rhoton, her ex-husband, to the Road Dog Saloon in Indianapolis. Rhoton told her to leave, so she drove to a nearby strip mall to wait. The saloon was closed, but Rhoton walked to the back of the building with a pickax and flathead screwdriver. When Philpot returned about ten minutes later, Rhoton threw the pickax in the back of the truck and screwdriver in the cab and said, "I smashed the dicksucker's brains in."
>
> At Rhoton's request, Philpot left again and then returned fifteen minutes later. She saw Rhoton in a shed behind the saloon, left again, and returned a few minutes later to find Rhoton waiting for her by the street. He instructed her to pull around back. There Rhoton and Philpot loaded two barrels full of frozen meat and other food into the back of the truck. As they left the saloon, Rhoton told Philpot that he needed to get rid of the pickax. Philpot drove back to the strip mall, where Rhoton placed the pickax next to a green recycling bin.
>
> Shortly before eleven o'clock on the evening of September 2, 2008, Officer Frank Vanek of the Indianapolis Metropolitan Police Department ("IMPD") was dispatched to investigate an alarm at the Road Dog Saloon on the southeast side of Indianapolis. When Officer Vanek arrived, he

found that the doors to the saloon were secure. However, in the rear of the building, he found Martin Wilburn wrapped in a blanket and lying facedown on a row of chairs that had been pushed together. Wilburn had suffered several severe injuries to his head and was bleeding profusely. The officers called for medics, who arrived within ten minutes and transported Wilburn to the hospital. Officers on the scene discovered that the shed in back of the saloon was not secure and that frozen food was missing from the shed's freezer.

Wilburn died a short time later as a result of his injuries. He had suffered three large lacerations around and below his left ear. Each laceration was approximately one and one-half inches long, and the one below the left earlobe penetrated "approximately one inch into the tissues of the lower portion of the skull." In one of the skull fractures Wilburn had sustained, "a piece of bone was literally pushed in causing a punched out effect[,]" and his brain was lacerated.

At the same time that evening, IMPD Officer Craig Wildauer was assisting another officer with an arrest for possession of marijuana on the east side of Indianapolis. When the arrestee's cell phone rang, Officer Wildauer answered and pretended to be the arrestee. In a very brief conversation, the caller, a male, asked to meet. Subsequently a female called the arrestee's cell phone, and then a male got on the phone. Officer Wildauer agreed to meet the caller at the intersection of East Washington Street and Sherman. Shortly after Officer Wildauer drove to that intersection, he saw a pickup truck pull in to a parking lot on the southwest corner without using a turn signal, and the truck's driver was not wearing a seatbelt. Officer Wildauer initiated a traffic stop of the truck.

In the traffic stop, the officer learned that Kimberly Philpot was the driver, and Rhoton was her passenger. Philpot and Rhoton appeared nervous. Officer Wildauer noticed that the bed of the truck contained large barrels filled with frozen meat and frozen breaded mushrooms. Officer Brady Ball arrived as backup. Officer Wildauer had Rhoton wait on the truck's open tailgate while he took Philpot to the front of the truck. Once at the front of the truck, Philpot told the officer that she thought someone at the Road Dog Saloon needed help. When the officers inquired through IMPD about a problem at the Road Dog Saloon, they learned of the break-in and Wilburn's injuries. Philpot then told Officer Ball that Rhoton had left a pickax by the recycling bin behind a strip mall. Later testing disclosed the presence of Wilburn's blood and DNA on the pickax.

Rhoton v. State, 938 N.E.2d 1240, 1242-43 (Ind. Ct. App. 2010) (citations omitted), trans. denied. Rhoton was charged with murder, a felony, and burglary, a Class A felony. The State subsequently charged Rhoton as an habitual offender. A jury found Rhoton guilty of both counts, and he admitted to being an habitual offender. Rhoton was sentenced to eighty-one years imprisonment.

On June 29, 2011, Rhoton, pro se, filed his petition for post-conviction relief, alleging ineffective assistance of trial counsel and appellate counsel. On July 25, 2012, an evidentiary hearing was held, at which Dominic Martin, Rhoton's trial attorney, and Dara Goodrich, an investigative paralegal with the public defender agency, gave testimony. Subpoenas were issued for additional witnesses—Barbara Sherman, Dave Ezelle, Kelly Voils, and Jennifer Hix—who did not appear at the hearing. On October 23, 2013, the post-conviction court denied Rhoton's petition for relief. This appeal followed. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002), cert. denied, 540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. Id. at 746.

## II. Rhoton's Post-Conviction Hearing

Rhoton argues he has been denied due process and the right to a fair post-conviction hearing. His contentions on this point are twofold. First, he asserts that Indiana's entire post-conviction relief system is fundamentally unfair to pro se litigants and denies them due process. Second, Rhoton claims the post-conviction court was biased and adversarial, precluding the possibility of a fair hearing. We find these arguments unavailing.

In Indiana, pro se litigants are held to the same standards as licensed attorneys and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. At bottom, Rhoton claims that our procedural and evidentiary rules are too complicated and that enforcing those requirements against pro se litigants results in a denial of due process of law.[1] This argument effectively asks us to make one of two conclusions: (1) there is a constitutional right to counsel in post-conviction relief proceedings, or (2) pro se litigants are not required to adhere to our system's procedural and evidentiary rules. We decline to hold in either respect.

Importantly, our supreme court has recognized that "there is no constitutional right to counsel in post-conviction, or collateral review, proceedings under either the federal or the state constitution." Hill v. State, 960 N.E.2d 141, 145 (Ind. 2012). Rhoton, however, refers us to a decision by the United States Supreme Court holding a pro se litigant to "less stringent standards" when considering a motion to dismiss against a pro se

---

[1] The State Public Defender entered an appearance to represent Rhoton but later withdrew as counsel pursuant to Indiana Post-Conviction Rule 1(9)(c). The post-conviction rules allow the State Public Defender to withdraw an appearance if it determines "the proceeding is not meritorious or in the interests of justice." Ind. Post-Conviction Rule 1(9)(c).

complaint. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam). Not only is this standard unconnected with post-conviction proceedings, but its foundation appears to be in gratuity rather than in the Due Process Clause.

There is little doubt that the rules of procedure and evidence are more difficult for a lay person to navigate than a trained attorney. Nevertheless, we cannot say that our practice of holding pro se litigants to those standards constitutes a denial of due process.

Rhoton argues separately that the post-conviction court's rulings in this case subjected him to a fundamentally unfair process. He argues "[t]he post-conviction court denied [him] several witnesses, including Jennifer Hix, Kelly Voils, Dave Ezelle, Barbara Sherman, and Lackeeta Brown." Brief of Appellant at 15. This is incorrect, as the trial court issued subpoenas to Hix, Voils, Ezelle and Sherman, and those individuals simply failed to appear. Rhoton did not request a continuance and elected to proceed with his post-conviction hearing without those witnesses present; therefore, any argument regarding a "denial" of those witnesses has been forfeited. See Shuttleworth v. State, 469 N.E.2d 1210, 1213 (Ind. Ct. App. 1984).

As to Lackeeta Brown, the trial court denied Rhoton's request for a subpoena after concluding Rhoton's request failed to explain who she was or establish her relevance to the proceedings. Petitioners proceeding pro se are entitled to request the issuance of a subpoena by providing an affidavit stating the reason for calling the witness and the expected testimony. Indiana Post-Conviction Rule 1(9)(b). "If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and

probative, it shall enter a finding on the record and refuse to issue the subpoena." Id. The decision to grant or deny a request for issuance of a subpoena is within the trial court's discretion. Johnson v. State, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005), trans. denied. We do not believe the post-conviction court's denial of Rhoton's request to subpoena Brown was an abuse of discretion.[2]

Rhoton also complains of the post-conviction court's sustaining of objections by the State, which precluded Rhoton from obtaining Philpot's medical records and from admitting numerous exhibits without any foundation. However, Rhoton has not shown that any of these adverse rulings were an abuse of the trial court's discretion. And "an adverse ruling alone is not sufficient to show bias or prejudice." Flowers v. State, 738 N.E.2d 1051, 1060 n.4 (Ind. 2000). Rhoton further asserts the post-conviction court "took an adversarial role" in the proceeding, Br. of Appellant at 16, but the two exchanges in the transcript identified by Rhoton do not show the post-conviction court to be prejudiced against Rhoton. In fact, as the State points out, on at least two occasions the post-conviction court informed Rhoton that he was being given "leeway" due to his pro se status. Transcript at 57, 67.

In sum, Rhoton has not shown that his post-conviction proceedings were fundamentally unfair.

---

[2] On appeal, Rhoton attempts to establish Brown's relevance, claiming she was a witness who could authenticate phone records showing Rhoton had not made a phone call and spoken to Officer Wildauer on the night of the murder. The State points out that Rhoton did not attempt to subpoena these alleged phone records, and there is no clear connection between the phone records and Rhoton's claims of ineffective assistance.

### III. Trial Counsel

Rhoton argues the post-conviction court erred by denying his claim of ineffective assistance of trial counsel. Rhoton alleges numerous instances of ineffectiveness, including failure to present a defense, call witnesses, impeach a key witness, present exculpatory evidence, and suppress evidence.

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. Id. at 687. When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. Id. at 689. A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. Id. at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that

course should be followed" without consideration of whether counsel's performance was deficient. Id.

## A. Failure to Present a Defense

First, Rhoton contends Martin provided ineffective assistance by failing to present a viable defense at his jury trial. Specifically, Rhoton takes issue with Martin's decision to undertake a strategy of holding the State to its burden and to refrain from calling witnesses. Our supreme court has said that "[t]rial counsel's strategy to put the State to its burden and not present a defense, like other strategic decisions, is a legitimate trial strategy." Rondon v. State, 711 N.E.2d 506, 520 (Ind. 1999). Because Rhoton did not prove the existence of another obvious winning strategy, we cannot conclude Martin was deficient in making this tactical decision.

## B. Failure to Impeach Philpot

Next, Rhoton argues Martin performed deficiently by failing to impeach Philpot, the State's star witness. However, as the post-conviction court's order points out, Martin did in fact cross-examine Philpot and impeach her in a number of different ways. Lines of questioning in that cross-examination included Philpot's drug use (including drug use on the night of the murder), her failure to call police despite her knowledge of the crime, the fact that she aided in the robbery, that she touched the murder weapon, and that no charges were filed against her regarding the incident. In truth, Martin did impeach Philpot; Rhoton simply argues that Martin should have done it differently or "better." "It is well settled that the nature and extent of cross-examination is a matter of strategy

delegated to trial counsel." Waldon v. State, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997), trans. denied. We find no deficiency in trial counsel's impeachment of Philpot.

### C. Philpot's Medical Records

Related to his impeachment argument, Rhoton claims Martin was deficient by failing to investigate Philpot's claim that she suffered from post-traumatic stress disorder ("PTSD") and obtain Philpot's medical records. We find Rhoton's claim on this point to be highly speculative, given that there is no evidence of what Philpot's medical records contain. That said, even if Philpot had exaggerated the extent of her PTSD, we can find no deficient performance where Martin declined to obtain these records and attempt to impeach with them at trial. Once again, the nature and extent of cross-examination is a matter of trial strategy within the discretion of trial counsel. Id. Moreover, we note that Martin explained during the post-conviction hearing that attempting to impeach Philpot on the PTSD issue would open the door to evidence of Rhoton's past acts of domestic violence against Philpot. Such evidence of Rhoton's violent nature would be devastating in his murder case, and Martin's decision not to open the door to that evidence was quite reasonable. Therefore, Martin did not perform deficiently by failing to introduce evidence of Philpot's medical history.

### D. Failure to Call Witnesses

Rhoton also contends that Martin was ineffective for failing to call Hix, Sherman, Voils, and Ezelle to testify at trial. However, Rhoton failed to present any cognizable evidence at the post-conviction hearing regarding what these witnesses would have

supposedly testified to at trial. Therefore, Rhoton has failed to carry his burden of demonstrating deficient performance and prejudice.

Rhoton argues that he was unable to present evidence of the substance of witness testimony due to the unfair nature of the post-conviction proceedings. As we discussed above, Rhoton's post-conviction proceedings were not fundamentally unfair. The post-conviction court issued subpoenas to each of the potential witnesses, and those witnesses failed to appear at the post-conviction hearing. Rhoton did not request a continuance in order to secure the witnesses' presence and failed to admit other evidence of the witnesses' purported testimony.[3]

### E. Stipulation to DNA Evidence

Rhoton claims Martin was deficient for stipulating to certain DNA evidence admitted by the State at trial. Martin stipulated that DNA evidence found on Rhoton's clothing was from his own blood. Rhoton argues Martin should not have agreed to this stipulation because it relieved the State of the burden of calling an expert witness, who Rhoton alleges would not have testified that the DNA was his.

Rhoton's arguments as to the potential testimony of the expert witness are entirely speculative. Thus, Rhoton has not shown deficient performance. We also note that Martin testified that such a stipulation can be strategic to the extent that it minimizes the evidence and prevents the State from parading in impressive experts and DNA evidence to present to the jury.

---

[3] Furthermore, Martin testified at the post-conviction hearing that he and his investigator were aware of these witnesses and that a decision was made that several of them should not be called to testify due to issues of credibility or the risk of bringing in evidence damaging to Rhoton's case.

Moreover, even if we assumed that an expert would have testified that the blood on Rhoton's jeans belonged to someone other than Rhoton, we cannot see how this would have aided Rhoton or altered the result of the proceeding. Rhoton has not shown that the stipulation prejudiced him in any way.

## F.  Phone Records

Next, Rhoton argues his trial counsel was ineffective for failing to introduce phone records that Rhoton claims would have proved that Rhoton did not make calls to a drug dealer's phone as reported by Officer Wildauer. Rhoton's claims regarding these alleged phone records are unsubstantiated. Rhoton did not admit any evidence of such records at the post-conviction hearing. As discussed above, the post-conviction court denied Rhoton's request to subpoena Brown as a witness because Rhoton failed to establish the relevance of Brown's testimony to his claims, and Rhoton did not subpoena any phone records. Because Rhoton failed to present any evidence on the issue, we cannot conclude that his trial counsel performed deficiently or that Rhoton was prejudiced.

## G.  Failure to Suppress Evidence

Last, Rhoton contends he received ineffective assistance of trial counsel because Martin did not seek to suppress evidence seized from his truck as a result of a traffic stop. The traffic stop in question was initiated by Officer Wildauer. While making an unrelated drug arrest, the arrestee's phone rang and Officer Wildauer answered it. Officer Wildauer spoke with a man and woman (ostensibly Rhoton and Philpot) who wished to meet at a proposed intersection. Officer Wildauer drove to the location and observed Rhoton commit a traffic violation before pulling into a parking lot at the

12

intersection. Officer Wildauer then conducted a traffic stop, which led to the discovery of items stolen from the Road Dog Saloon and Philpot's tip to police that eventually linked Rhoton to the murder.

Rhoton rightly recognizes that to prevail on a claim of ineffective assistance of counsel based on a failure to file a motion to suppress evidence, the petitioner must demonstrate that such a motion would have been successful. See Moore v. State, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007), trans. denied. Rhoton does not contest that Officer Wildauer had the requisite reasonable suspicion to justify the traffic stop. See Veerkamp v. State, 7 N.E.3d 390, 394 (Ind. Ct. App. 2014) (stating that reasonable suspicion justifies a traffic stop and that the commission of a traffic violation gives rise to reasonable suspicion). However, Rhoton claims that the stop violated his right to be free from unreasonable searches and seizures because of "(1) the pretextual nature of the stop, and (2) the investigative nature of the stop that far exceeds the scope of the traffic violation." Br. of Appellant at 32-33.

Both the United States Supreme Court and the Indiana Supreme Court have previously said that the pretextual nature of an investigatory stop does not render the stop unreasonable. Whren v. United States, 517 U.S. 806, 813 (1996) (holding the reasonableness of a traffic stop under the Fourth Amendment does not depend on the actual motivations of the officers involved); Mitchell v. State, 745 N.E.2d 775, 787 (Ind. 2001) (stating under the Indiana Constitution there is "nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the

motorist, to nevertheless respond to an observed traffic violation."). Therefore, Rhoton's first argument is without merit.

As to Rhoton's argument regarding the scope of the traffic stop,

[i]t is true that an investigatory stop on "less than probable cause" (i.e. reasonable suspicion) must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . . [and] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. This limitation includes the length of a detention and the transfer of a suspect to a different location.

State v. Gilbert, 997 N.E.2d 414, 417-18 (Ind. Ct. App. 2013) (citations and quotation marks omitted). That said, it does not appear that the scope of this particular traffic stop was unreasonable. Because of the phone call that led him to Rhoton's location, Officer Wildauer already had suspicion that Rhoton may be attempting to purchase or sell drugs. Further, Officer Wildauer observed that Rhoton and Philpot appeared nervous, and the officer noticed large containers filled with frozen meat in the bed of Rhoton's truck. These facts were sufficient to extend the scope of the traffic stop. And of course, once Philpot told an officer that someone at the Road Dog Saloon might need help, the stop could be further extended. In sum, Rhoton has not demonstrated that a motion to suppress would have been successful, and thus, his claim of ineffective assistance must fail.

### IV. Appellate Counsel

Finally, Rhoton asserts that he received ineffective assistance of appellate counsel. He argues his appellate counsel acted deficiently by "couching an issue of incredible dubiosity within an argument regarding the sufficiency of the evidence." Br. of

Appellant at 36. According to Rhoton, this prevented appellate counsel from adequately arguing the issues and lessened his chances of reversal by this court.

The standard of review for assessing claims of ineffective assistance of appellate counsel is the same as for claims of ineffective assistance of trial counsel: the petitioner must establish deficient performance and resulting prejudice. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001), cert. denied, 535 U.S. 1019 (2002). There are three basic categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal; (2) failure to raise an issue on appeal; or (3) failure to adequately present an issue despite raising the issue on appeal. Bieghler v. State, 690 N.E.2d 188, 193-95 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). Rhoton's argument falls under the third category. "[A]n ineffectiveness challenge resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance. . . . Relief is only appropriate when the appellate court is confident it would have ruled differently." Id. at 196.

Rhoton's arguments do not overcome the high bar our standard of review sets when challenging appellate counsel's presentation of issues. Moreover, if appellate counsel were to separate the incredible dubiosity and sufficiency arguments, as Rhoton suggests, we do not believe that would have changed this court's decision in Rhoton's direct appeal. Therefore, we hold the post-conviction court properly denied Rhoton's claim of ineffective assistance of appellate counsel.

<u>Conclusion</u>

Concluding Rhoton's post-conviction proceedings were not fundamentally unfair and that the post-conviction court properly denied Rhoton's ineffective assistance of counsel claims, we affirm the denial of post-conviction relief.

Affirmed.

BAKER, J., and KIRSCH, J., concur.