**In the Matter of Charles
B. BLACKWELDER.**

**No. 49S00–9101–DI–14.**

Supreme Court of Indiana.

June 11, 1993.

John G. Forbes, William N. Ivers, Stewart & Irwin, Indianapolis, for respondent.

David B. Hughes, Indianapolis, for Indiana Supreme Court Disciplinary Comm.

DISCIPLINARY ACTION

PER CURIAM.

Charles Blackwelder, the respondent in this case, was charged in a complaint for disciplinary action with one count of professional misconduct alleging several violations of the *Rules of Professional Conduct for Attorneys at Law.* This court appointed a hearing officer pursuant to Admission and Discipline Rule 23(11)(b), and, after a hearing thereon, he tendered his Findings of Fact and Conclusions of Law.

The respondent petitioned for review, contending that several findings were not supported by credible evidence, several were inconsistent, and that the hearing officer failed to make findings as to mitigating factors. Our review of attorney disciplinary cases is *de novo* in nature and

involves a review of the entire record submitted in the case. The hearing officer's findings may receive emphasis given his opportunity to directly observe the witnesses, but this court is the final arbiter of disputed facts and the ultimate conclusions. *Matter of Levinson* (1992), Ind., 604 N.E.2d 599; *Matter of Smith* (1991), Ind., 579 N.E.2d 450; *Matter of Gemmer* (1991), Ind., 566 N.E.2d 528. Respondent's challenges will be addressed within the context of this review process.

After requesting a stay of this decision, the respondent also filed a Petition to Include and Consider Newly Discovered Evidence indicating that one of the complaining witnesses had subsequently been charged with criminal conversion of funds from her employer who was an appellate court judge. We grant respondent's motion and, accordingly, such evidence will be considered in our deliberation and decision.

The respondent is a member of the Bar of this state, having been admitted on June 1, 1978. In October of 1988, Randall and Dianna Gosnell retained the respondent to pursue an appeal of a default judgment entered against the Gosnells. The clients had already filed a *pro se* Motion to Correct Error, and the trial court had denied it. Respondent filed a timely praecipe for the record, obtained and reviewed the record, but he miscalculated the deadline for filing the record, and, thus, missed the filing date.

Upon discovering his error, the respondent arranged a meeting with the clients and, on January 5, 1989, met with them for approximately two hours. They met again at respondent's office on February 2, 1989, at which time the respondent presented and read to the clients a "Retainer Agreement an (sic) Release of Claims and Covenant Not To Sue."

Therein, the respondent agreed to reimburse the Gosnells for their out-of-pocket expenses in connection with the appeal and to file a joint bankruptcy petition in return for a release. The clients agreed to "... release, acquit and forever discharge Attorney from any and all claims, grievances, suits and causes of action, arising from Attorneys (sic) failure to perfect the appeal ...", and, in a subsequent paragraph, agreed to "... not file any complaint or grievance against Attorney with the Indiana Supreme Court Disciplinary Commission or any bar association." The document also stated that "Attorney also recommended that the Clients take sufficient time to thoroughly consider the offer and to seek the advice of another attorney(s) before making a final decision; and Whereas, Clients have considered the offer and have consulted with another attorney...."

After the execution of the "Retainer Agreement and Release", the respondent refunded to the Gosnells $2,096.00 for expenses incurred by the appeal. Respondent filed the bankruptcy petition and paid the filing fees. The Gosnells obtained a discharge of the default judgment which the respondent had failed to appeal and of approximately $300,000 in unrelated debt.

The Gosnells filed a grievance with the Disciplinary Commission on March 7, 1990. By a letter dated March 5, 1990, to the respondent, Mr. Gosnell expressed his displeasure with respondent and advised that he deemed the "Mal (sic) Practice Agreement" breached by the respondent. In this letter, Gosnell also indicated that he was upset that the respondent had not paid some $450 to the U.S. Trustee's Office, which he felt should have been paid by the respondent pursuant to their agreement.

Respondent withdrew his appearance on March 30, 1990. On December 21, 1990, the Gosnells filed a civil action for damages against him.

At hearing, the parties presented conflicting evidence as to events leading up to the execution of the release. The hearing officer's findings reconciled some but not all of such conflicting evidence. At the conclusion of his findings, the hearing officer weighed the evidence presented by the witnesses and concluded that the respondent's conduct did not comport with the standards set out in the *Rules of Professional Conduct.*

The Gosnells testified that the respondent did not advise them to seek advice from other attorneys, that they did not

consult other attorneys before signing the release, that they specifically told respondent that they had not sought independent advice, but signed the release notwithstanding the provision because the respondent advised that he needed the clause for his own protection.

Respondent, on the other hand, testified that he advised the Gosnells to consult independent counsel and that they informed him that they had contacted attorney Henry Price. Mr. Price testified that he had talked with the Gosnells. He had no notes or diary entries that identified the Gosnells by name and had no way to specifically fix the time, but there were two entries on an office log in January indicating he had talked with a potential client. His recollection was that the Gosnells wanted to discuss a potential employment involving a legal malpractice claim against the respondent. He did not discuss the wisdom of signing a release nor the proposed bankruptcy proceeding.

We find that the Gosnells spoke with Henry Price, at an undetermined time, about a possible malpractice suit against the respondent. This, however, in no way indicates that the respondent met his duty as set out in Prof.Cond.R. 1.8(h) or that the Gosnells in fact sought advice concerning the document they were to execute. To the contrary, Price testified that the release agreement was not discussed.

■ Prof.Cond.R. 1.8(h) provides that a lawyer shall not settle a claim of liability with an unrepresented client or former client without *first* advising that person *in writing* (emphasis added) that independent representation is appropriate in connection therewith. We note that the corresponding Disciplinary Rule 6–102 under the superseded *Code of Professional Responsibility* categorically prohibited all attempts to limit attorney's liability for malpractice. Such practices are still subject to close scrutiny but may not be subject to discipline under certain specific circumstances, where the client has been adequately advised in writing well in advance of final execution of any release or settlement. Providing to the client a copy of the proposed document so that it can be reviewed by independent counsel would further assure compliance with the intent of this rule.

Respondent failed to comply with the express requirement of this rule. The only written reference to the necessary advice was contained in the release prepared by Respondent and presented to the Gosnells at the time of execution. Such after-the-fact advice clearly fails to meet the letter and the spirit of the rule.

■ In light of the findings and the foregoing considerations, we conclude that, by limiting his liability for malpractice without adequate prior advice to seek independent counsel, the respondent violated Rule 1.8(h). We also conclude that respondent's conduct in preparing the release for his client's signature violates Rule 1.7(b). By procuring a promise not to file a disciplinary grievance, the respondent attempted to obstruct the disciplinary process and engaged in conduct prejudicial to the administration of justice, in violation of Prof. Cond.R. 8.4(d).

Upon finding misconduct, we must now determine an appropriate sanction. Respondent's actions in admitting his mistake and attempting to forge a reasonable settlement of his liability cannot be reproached. However, he attempted to reach his goal by circumventing the ethical requirements and silencing the complaining clients. The respondent had a duty of undivided loyalty to his clients and a duty to the public and the legal system to safeguard the orderly administration of justice, both of which he breached. We are convinced, however, that respondent's misconduct was more the result of negligent disregard of ethical requirements than of intentional design. Under these circumstances, a public reprimand appropriately censures respondent's acts. It is, therefore, ordered that Charles B. Blackwelder is reprimanded and admonished for his misconduct.

Costs are assessed to the respondent.