In the Matter of Raymond S. ROBAK.

No. 30S00–9203–DI–139.

Supreme Court of Indiana.

Aug. 3, 1995.

Kevin P. McGoff, Kiefer & McGoff, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary and Charles M. Kidd, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

 Raymond S. Robak is charged with several violations of the *Rules of Professional Conduct for Attorneys at Law* arising from his representation of a client with interests adverse to those of a former client. Following the Disciplinary Commission's filing of a formal complaint, this Court appointed a hearing officer pursuant to Ind.Admission and Discipline Rule 23, Section 11. After an evidentiary hearing on the charges, the hearing officer submitted her findings of fact and conclusions of law to this Court, therein finding that Respondent engaged in misconduct as charged. Respondent has petitioned this Court for review of the hearing officer's report, challenging the hearing officer's findings. Our review of disciplinary cases is *de novo* in nature and involves review of the entire record submitted in this case *In re Blackwelder* (1993), Ind., 615 N.E.2d 106. The hearing officer's report, being a product of direct observation of witnesses, will be given appropriate emphasis, but this Court is the final arbiter of disputed facts and ultimate conclusions. *In re Levinson* (1992), Ind., 604 N.E.2d 599; *In re Gemmer* (1991), Ind., 566 N.E.2d 528. To support a finding of misconduct, this Court must be satisfied that such is based on clear and convincing evidence. Admis.Disc.R. 23(14)(f); *In re Heamon* (1993), Ind., 622 N.E.2d 484; *In re Oliver* (1986), Ind., 493 N.E.2d 1237. Respondent's challenges will be addressed within the context of this review process.

Accordingly, we now find that Respondent was admitted to the practice of law in this state in 1965, and is therefore subject to this Court's disciplinary jurisdiction. Respondent represented a client ("client") regarding numerous legal matters beginning in the early 1980s. The client had married for a second time on July 15, 1978, and soon thereafter, he and his new wife ("wife") signed a "Marital Property Agreement" which purported to allow each to maintain a separate right to property brought into the marriage and any assets acquired in their own names during the marriage. The agreement, which was not drafted by Respondent, also provided that any will made before or after execution of the agreement need not contain provisions in favor of the other person and that neither party would contest the terms of the other's will or make claims contrary to the intent of the agreement.

At various times after execution of the marital property agreement, Respondent drafted wills for his client. One such will was executed on May 19, 1988. It provided no bequests in favor of the wife and indicated that it was made "with full cognizance of the terms of the marital property agreement . . ." The client also executed a trust agreement on May 19, 1988, which provided that the wife would receive an income from the trust's corpus and the right to live in the marital residence.

Respondent drafted a will for the wife in September, 1981. She was alone with Respondent in his office when that will was prepared. It was executed on September 23, 1981, and contained no bequests in favor of the client, but named her as executor of the estate.

The client died in November, 1989. His children from his first marriage, as executors of the estate, employed Respondent to represent the estate. In May of 1989, Respondent offered the client's May 19, 1988 will for probate.

In late 1989, the wife employed counsel in an effort to obtain her one-third Indiana statutory spouse's share [1], or a significant amount of cash, certain real estate, furnishings, and personal items from the estate in settlement. One of the issues explored by the wife's counsel was the validity of the marital property agreement, since it purported to restrict each spouse from challenging the other's will or taking other action contrary to the agreement. In response to the wife's efforts, Respondent filed a Petition to Determine Heirship and Determine Rights of Parties on January 9, 1990, stating, *inter alia*, that

Counsel for the estate and your personal representatives have been advised by

1. I.C. 29-1-3-1.

Counsel for [the wife] that the property settlement agreement is void and of no force or effect alleging various reasons ... your personal representatives are of the opinion that ... said property settlement agreement is based on existing Indiana law and therefore, valid.

That due to the nature of the claims of [the wife], uncertainty has arisen as to her interest in said estate and until such time as a determination is made as to the validity of said property settlement agreement, ... the orderly administration of said estate will be disturbed.

The wife alleged that she had not received a full disclosure of assets at the time the marital property agreement was entered and that it was therefore void.

Respondent questioned the wife at a deposition on February 20, 1990, in the presence of the wife's counsel. The following colloquy occurred:

[Respondent]: Have you made a will subsequent to the one that I prepared?

[Wife]: No.

[Respondent]: And do you recall what provisions you made for [client] in that will?

[Wife]: No.

[Respondent]: And do you recall discussion about the marital property agreement at the time that Will was signed?

[Wife]: No. To be truthful I don't. The making of the Will was an emotional thing for me and I'm—*I probably cried in your office at that time.*

[Respondent]: *If I would suggest you didn't, would that refresh your recollection?*

[Wife]: If you what?

[Respondent]: *Would refresh [sic] your recollection that you didn't cry when you did that?*

[Wife]: Oh dear. I don't remember. I know—I know it was emotional for me because those things always are.

(Emphasis supplied).

The hearing officer found that Respondent, through his questioning, sought to establish that the wife understood the effect of the marital property agreement and relied upon it when creating her own will.[2]

On April 4, 1990, the wife's attorney sent a letter to Respondent, which stated in part:

I do want to confirm to you that if it is necessary to litigate the Post Nuptial issues in the estate ..., we will ask the Court to disqualify you because you more than likely will be a witness and because of conflict of interest.

The wife ultimately entered an agreement with the executors of the estate settling the contested issues. Under the terms of the agreement, the wife received that which she would have received under the terms of the trust agreement. Respondent remained as counsel to the estate until the conclusion of the matter and filed a final accounting on July 13, 1990.

The Commission charged that Respondent, by representing the estate in direct opposition of his former client, the wife, violated Ind.Professional Conduct Rules 1.9[3] and 8.4(a).[4] The hearing officer found that an

---

2. The testimony at hearing of this matter is illustrative of Respondent's motive underlying his questioning of the wife:

[Commission]: Well, how was [the wife's] property disposition relevant?
[Respondent]: Because if she cut [the client] out of her will, she was taking advantage of the marital property agreement. In other words, she was acknowledging that it was a valid document.
[Commission]: Don't you think the disposition of her testamentary property is a matter of some confidence between her and her lawyer?
[Respondent]: Sure.
Tr. at 83–84.

3. Professional Conduct Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

4. Professional Conduct Rule 8.4(a) provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce

attorney-client relationship was formed between Respondent and the wife and that Respondent violated Prof.Cond.R. 1.9(a) by representing the wife during preparation of her will, and then by representing the estate of his client, her late husband, in a substantially related matter in which the estate's interests were materially adverse. The hearing officer also concluded that Respondent violated Prof.Cond.R. 1.9(b) by questioning the wife about the representation he provided to her during the creation of her 1981 will with the intention of using that information to her disadvantage. The hearing officer also found Respondent violated Prof.Cond.R. 8.4(a) by violating the *Rules of Professional Conduct*. Respondent claims that the hearing officer's findings of misconduct are erroneous because the Commission failed to meet its burden of proof and because the factual findings of the hearing officer are incomplete and do not support her legal conclusions.

Respondent contends that the Commission offered no evidence that the wife's claims against the estate were "substantially related" to Respondent's prior representation of her. He also claims the Commission failed to prove the interests of the estate and the wife were "materially adverse," stating that, in fact, his representation of the wife had nothing to do with her claims against the estate. The wife, he argues, ultimately received precisely what was provided for her in the client's estate plan and that, therefore, the position of the estate representatives and the wife were not materially adverse.

This Court has not had occasion to specifically define "substantially related matter" within the context of Prof.Cond.R. 1.9(a). However, in regard to serial representation by a lawyer, we have said the lawyer must be disqualified in a present action if the issues of a prior and present case are "essentially the same or are closely interwoven therewith." *State v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377. *See also In re Zinman* (1983), Ind., 450 N.E.2d 1000, 1002

(*citing Tippecanoe County Court* in finding violation of DR 5–105(C)); *Shuttleworth v. State* (1984), Ind.App., 469 N.E.2d 1210, 1217 (suggesting that "substantially related" in the context of ethical rules must be ascertained in regard to avoiding an "appearance of impropriety.") [5] The Comment to Rule 1.9 provides further guidance:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

■ The hearing officer found that the Commission met its burden of proof by showing that Respondent represented the wife in preparation of her will and then represented the estate in a substantially related matter. After examining the record in this matter, we are satisfied that the preparation and execution of the wife's will in 1981, being by nature a provision for the ultimate disposition of her property in accord with the existing marital property agreement, was sufficiently interwoven with her later attempts in the estate action to challenge the validity of the marital property agreement so as to satisfy the "substantially related" element of Prof.Cond.R. 1.9.

■ We are also satisfied that the wife's claim against the estate was "materially adverse" to the interests of the estate. The principles of Prof.Cond.R. 1.7 determine whether the interests of the present and former client are adverse. *Comment* to Prof.

---

another to do so, or do so through the acts of another;

. . .

**5.** For a similar description, *see Flo–Con Systems, Inc. v. Servsteel, Inc.* (1990), N.D.Ind., 759 F.Supp. 456, 459 ("whether the subject matter of

the two representations are substantially related turns on whether a law firm 'could have obtained confidential information in the first representation that would have been relevant to the second.' ") (citations omitted).

Cond.R. 1.9. Factors to be considered in this assessment include the duration and intimacy of the lawyer's relationship with the clients, the functions being performed by the lawyer, the likelihood that actual conflict will arise, and the likely prejudice to the client if conflict does arise. *Id.* The question often is one of proximity and degree. *Id.* In the present case, Respondent represented the estate, and, more specifically, the co-executors of the estate. An executor is duty-bound to manage and protect those assets of which he has possession for both the creditors and the distributees by employing reasonable precautions against loss to the estate. *In re Estate of Kingseed* (1980), Ind. App., 413 N.E.2d 917. *See also* I.C. 29–1–13 *et seq.* In a general sense, Respondent's duty to aid in the preservation the estate's assets was materially adverse to the wife's objective of seeking more from the estate than was originally provided to her in the client's estate plan. More specifically, Respondent sought to establish the validity of the marital property agreement to preserve estate assets. The wife sought to invalidate the same agreement. As such, we conclude that Respondent's representation of the estate was materially adverse to his prior representation of the wife and therefore violative of Prof.Cond.R. 1.9(a).

■ Respondent also disputes the hearing officer's finding that he violated Prof.Cond.R. 1.9(b). Respondent claims that, since the service he provided to the wife in drafting her will in 1981 had nothing to do with the wife's subsequent challenge of the client's will, the information gained during the prior representation could not have been used to the wife's disadvantage. Further, Respondent asserts that his questions during the deposition were open-ended, not leading, and concerned with "information relating to the [prior] representation," as required by Prof. Cond.R. 1.9(b). We disagree. As stated above, Respondent's representations of the wife and the estate were substantially related. During questioning, Respondent sought to elicit from the wife testimony about events which occurred during their meeting in 1981. Specifically, Respondent's statement that "If I would suggest you didn't [cry during our meeting], would that refresh your recollec-

tion?" is, in effect, an assertion that the wife did not cry during their meeting and is thus "information relating to the [prior] representation." This information was apparently elicited to prove that the wife was relying on the provisions of the marital property agreement as part of her estate plan, *i.e.,* that eliminating the client as an heir was not an emotional decision, but one based only on the terms of the marital property agreement. Such information would work to the disadvantage of the wife by tending to invalidate her contention that the marital property agreement was void due to inadequate disclosure. Further, by suggesting the wife did not cry after she stated that she did not remember, Respondent was attempting to impeach her credibility as a witness by using confidential client information. Such use of attorney-client information was to her disadvantage. Generally, a lawyer has a legal and ethical duty to maintain confidences and secrets of a client, both during and subsequent to the attorney-client relationship. *Washington v. State* (1982), Ind., 441 N.E.2d 1355. Respondent failed to do so. We find that he violated Prof.Cond.R. 1.9(b). By violating the *Rules of Professional Conduct,* Respondent violated Prof.Cond.R. 8.4(a).

■ Now that we have found misconduct, it is the duty of this Court to assess an appropriate disciplinary sanction. In this regard, we examine several relevant factors, among them the nature of the misconduct, actual or potential injury flowing from the misconduct, the state of mind of Respondent, the duty of this Court to preserve the integrity of the profession, the potential injury to the public in permitting the Respondent to continue in the profession, and matters in mitigation, extenuation, or aggravation. *In re Cawley, Jr.* (1992), Ind., 602 N.E.2d 1022; *In re Wells* (1991), Ind., 572 N.E.2d 1290.

■ Respondent violated a fundamental tenet of the lawyer-client relationship, that of loyalty. One of the cornerstones of competent legal service is an attorney-client relationship wherein the client is assured of having confidences kept and loyalties preserved. The *Rules of Professional Conduct* require that every lawyer extend undivided loyalty to

every client. *In re Colestock* (1984), Ind., 461 N.E.2d 137, 140. Conduct such as Respondent's threatens individual clients' interests and the efficacy of the legal profession generally. At the very least, it suggested that Respondent used confidential information of a former client to make himself more valuable to a subsequent adverse client.

It is imperative that attorneys be familiar with and faithful to ethical constraints to ensure that the public and Bar are protected from abuses, both intentional and merely negligent. *In re Gerde* (1994), Ind., 634 N.E.2d 494. We also recognize, however, that Respondent's conflict appears to have been an isolated occurrence and that his professional actions have never before been formally called into question. We thus believe that he does not present a continuing threat to the public or the profession and that a public reprimand is an appropriate disciplinary sanction for his misconduct. Respondent Raymond T. Robak is therefore reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against Respondent.