FOR THE RESPONDENT FOR THE INDIANA SUPREME COURT DISCIPLINARY COMMISSION

James H. Voyles
 
Donald R. Lundberg, Executive Secretary

Dennis E. Zahn
 Robert C. Shook, Staff Attorney

1 Virginia Ave., Ste. 700
 115 W. Washington Street, Ste. 1060

Indianapolis, IN 46204
 Indianapolis, IN 46204

________________________________________________________________________

IN THE

SUPREME COURT OF INDIANA

IN THE MATTER OF )

) Case No. 54S00-9703-DI-218

WILLIAM A. GOEBEL )

________________________________________________________________________

DISCIPLINARY ACTION

________________________________________________________________________

December 30, 1998

Per Curiam

The Indiana Supreme Court Disciplinary Commission has charged the respondent, William A. Goebel, with violating Rule 1.6(a) of the 
Rules of Professional Conduct for Attorneys at Law
 by revealing to his client confidential information about another client of the law firm at which respondent worked.  

This Court appointed a hearing officer pursuant to Ind. Admission and Discipline Rule 23, Section 11, who, after full hearing, tendered to this Court his factual findings and conclusions of law.  The hearing officer found the respondent did not violate Rule 1.6(a), which provides:

(a) A lawyer shall not reveal information relating to 

representation of a client unless the client consents

after consultation, except for disclosures that are

impliedly authorized in order to carry out the repre-

sentation, and except as stated in paragraph (b).

(b) A lawyer may reveal such information to the extent

the lawyer reasonably believes necessary:

(1) to prevent the client from committing any criminal

act . . . 

The Disciplinary Commission petitioned this Court for review of the hearing officer’s report, arguing that his finding of no misconduct was erroneous.   

The respondent was admitted to the practice of law in this state in 1983 and is, therefore, subject to this Court’s disciplinary jurisdiction.  Our review of disciplinary cases is 
de novo
 and involves review of the entire record submitted in this case.  The hearing officer’s report, being the  product of direct observation of witnesses, is given appropriate deference, but this Court is the final arbiter of disputed facts and ultimate conclusions.  
Matter of Robak
, 654 N.E.2d 731 (1995).  A finding of misconduct must be supported by clear and convincing evidence.  
Id.
; Admis.Disc.R. 23(14)(f).  

The facts are essentially undisputed.  The respondent was a partner in a Crawfordsville law firm.  During relevant periods, another partner (the “partner”) represented a client of the firm (the “guardianship client”) in a guardianship matter.  The partner sent correspondence about the guardianship proceeding to the client  at 3813 East 300 South [Street] in a specified Indiana city.  The mail was returned marked “No Such Street -- NSS.”

While the partner was representing the guardianship client, the respondent represented a client (the “criminal client”) against criminal charges.  The guardianship client’s husband was a witness for the prosecution in the criminal proceeding pending against the criminal client.  The criminal client informed the respondent of his intent to locate and kill the guardianship client and her husband, being aware that the respondent’s firm represented her.  The respondent attempted to dissuade the criminal client from doing so.   

On December 16, 1993, the criminal client appeared in the respondent’s law office and demanded the respondent reveal the location or address of the guardianship client.  The respondent showed the envelope which had been mailed by the partner to the guardianship client at 3813 East 300 South and which had been returned with the notation “No Such Street - NSS.”   The criminal client copied the address.  The respondent did not report the criminal client’s actions to police or the guardianship client.  Two days later, the criminal client murdered the guardianship client’s husband at her home at the actual address of 3813 South 300 East.  The criminal client was convicted of the murder and sentenced to life in prison without the possibility of parole.

The hearing officer found the respondent showed the returned envelope to the criminal client to substantiate that the respondent did not know the guardianship client’s real address and, therefore, to thwart any efforts of the criminal client to locate (and murder) the guardianship client or her husband.  In so concluding, the hearing officer noted language in the comment to Prof.Cond.R. 1.6(b), which provides: 

[t]he lawyer may learn that a client intends prospective conduct that is criminal.  As stated in paragraph (b)(1), the lawyer has professional discretion to reveal information in order to prevent  such consequences.  The lawyer may make a disclosure in order to prevent homicide or serious bodily injury which the lawyer reasonably believes is intended by the client.  It is very difficult for  a lawyer to “know” when such a heinous purpose will actually be carried out, for the client may have a change of mind. 

The hearing officer concluded that (1) the Commission failed to show by clear and convincing evidence that the respondent revealed information relating to the representation of the guardianship client; and (2) that the Commission failed to demonstrate that the respondent had any motive other than to indicate to the criminal defendant that he did not know the whereabouts of the guardianship client. 

In its petition for review, the Commission challenges the hearing officer’s finding that the respondent revealed the guardianship client’s returned envelope bearing the wrong address to dissuade the criminal client from committing a criminal act.  We do not view the critical issue here as whether the respondent revealed information relating to the representation of a client, despite the respondent’s arguments to the contrary.   Specifically, the respondent contends that the information he gave the criminal client was false and, therefore, not within the scope of Prof.Cond.R.1.6(a).  “[I]nformation relating to representation of a client,” as stated in Prof.Cond.R. 1.6(a), is a broad definition and has been construed to include all information relating to the representation regardless of the source.  ABA Comm. On Ethics and Professional Responsibility, Formal Op. 94-380 (1994).  Thus, “information” may include the identity or whereabouts of a client. Comment, 
American Bar
 
Association Annotated Model Rules of Professional Conduct
, p. 87. 
 The respondent provided information gained during the course of the representation -- an address that not only expressly indicated where the guardianship client could 
not
 be located, but which also contained a very strong suggestion of where the guardianship client 
could
 be located -- to another person without the guardianship client’s consent.  As such, he wrongfully  disclosed information contrary to the dictates of Prof.Cond.R. 1.6(a).   Therefore, the next and more difficult issue is whether his disclosure was excepted from the duty of confidentiality imposed by the rule.  The Commission argues that it was not. 

The evidence reveals that the criminal client had been searching for the guardianship client’s home for months and had even traveled to Bowling Green, Kentucky, in search of it.  The criminal client had told the respondent he wanted to kill the guardianship client, her husband, and the two police investigators handling the criminal client’s case.  During a police interview after the murder, the respondent expressed his fear of the criminal client and revealed that the criminal client had threatened both the respondent and his family. 

Professional Conduct Rule 1.6(b) provides that a lawyer may reveal information relating to the representation of a client to the extent the lawyer believes is reasonably necessary to prevent the client from committing any criminal act.   The respondent’s counsel claimed during final arguments before the hearing officer, and the hearing officer found, that the respondent revealed the address on the envelope to “dissuade” his client from committing murder.  However, the colloquy between the respondent and police during the respondent’s interview after the murder does not support that conclusion: 

Police: At some point did [the criminal client] relay to you that there was going to be a hearing [. . .]?

Respondent: Yes, he was aware of that and uh he was aware that my partner represented the [guardianship client]. 

Police: And during that uh or close to that date uh did [the criminal client] come to your office and was shown A. [sic] an address where uh [the guardianship client] was reportedly living at [. . .]?

Respondent: I believe, I think so.  I’m almost positive.  I think what the conversation was. Was he pressing me to find out the address and uh I ask [the partner] about it and she said every piece of mail that she had sent to the address given to her by [the guardianship client] had been returned and I believe I showed him an envelope to substantiate that I didn’t know her address by showing him an envelope with whatever address it was. 

Police: Did he write that address down? 

Respondent: I think he did.  Yes. 

Police: And 

Respondent: Pretty sure he did.

Police: All the information that he was trying to gather from you and other sources was for what purpose? 

Respondent: To track down [the guardianship client’s husband], it appeared. 

Police: To do what? 

Respondent: To get rid of him.  I assume. 

Police: To kill him? 

Respondent: Yes.  I think so. 

Commission’s Exhibit 1, at pp. 8-9. 

After giving the information to the criminal client, the respondent did not notify local police, the sheriff, or the guardianship client.
(footnote: 1)  
  Both the content of the respondent’s interview with police and his lack of action after showing the envelope to the criminal client to prevent him from locating the guardianship client demonstrate that the respondent did not display the envelope to prevent commission of a criminal act, but rather that he did so based on the criminal client’s forceful demand.
(footnote: 2)  Accordingly, we find that the respondent’s divulging of the information relating to his firm’s representation of the guardianship client was not excepted from Rule 1.6's confidentiality requirements.  We conclude that the respondent violated the rule.  

Now that we have found misconduct, we must determine the appropriate sanction.  In this regard, we examine several relevant factors, including the nature of the misconduct, actual or potential injury flowing from the misconduct, the state of mind of the respondent, the duty of this Court to preserve the integrity of the profession, the potential injury to the public in permitting the respondent to continue in the profession, and matters in mitigation, extenuation or aggravation.  
Matter of Robak
, 654 N.E.2d at 735.

The respondent violated one of the foundations of the attorney-client relationship -- confidentiality.   A client must be able to trust her attorney to keep confidential information gained in the course of representation.  Otherwise, full dialogue critical to the attorney-client relationship and, thus, to the best possible resolution of legal matters, will be compromised.  The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages individuals to seek early legal assistance.
  We are aware, of course, that the respondent faced very difficult circumstances when his threatening client confronted him as to the whereabouts of the guardianship client.  While the respondent’s fear for his own safety is understandable under the circumstances, such fear did not justify his revelation of confidential information. The respondent, like all attorneys admitted to practice in this state, stated in his oath of office that he would, 
inter alia
, “maintain the confidence and preserve the secrets of my client 
at every peril to myself 
. . .”  Admis.Disc.R. 22. (Emphasis supplied).   That the respondent revealed the information in this instance under conditions of severe duress is a strong and compelling mitigating factor, but does not change the fact that he violated the rule. 

We rarely have dealt with the revelation of confidential information as an isolated instance of misconduct.  In 
Matter of Anonymous
, 654 N.E.2d 1128 (Ind. 1995), an attorney declined to represent a potential client who consulted him, but he later used information obtained during that consultation in subsequent litigation adverse to the potential client.  There, we approved a conditional agreement between the Commission and the respondent which called for a private reprimand, noting that the attorney informed the client of his conflict of interest and declined to represent her, that the information obtained about the potential client’s case was readily available from public sources, and that the attorney had no selfish motive in revealing the information.

The present case differs somewhat in that the respondent was motivated by self interest in revealing the information, albeit understandably so for his own interest of self-preservation. Moreover, the information which the respondent conveyed to the criminal client  could not be obtained from other sources outside that law office.  These factors distinguish this case from
 Matter of Anonymous
.   However, we are fully aware of the very difficult situation leading to the respondent’s disclosure of the confidential information and therefore conclude that a public reprimand adequately addresses the misconduct. 

Accordingly, the respondent, William A. Goebel, is hereby reprimanded and admonished for the misconduct set forth in this opinion.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against the respondent.

FOOTNOTES
1:
We note, however, that the respondent was not required under the
 Rules of Professional Conduct
 to inform the guardianship client or law enforcement officials of the criminal client’s threats.  Professional Conduct Rule 1.6(b) provides that a lawyer “may reveal” confidential information to prevent the client from committing any criminal act.  This provision does not  
require
 that an Indiana attorney report a client’s threats to commit a criminal act. 

2: We point out that there is no evidence in the record that the information consisting of the erroneous address was a causal factor in the murder of the guardianship client’s husband.