**In the Matter of Mark E. WAGNER.**

**No. 50S00–9906–DI–362.**

Supreme Court of Indiana.

March 19, 2001.

Jere L. Humphrey, Plymouth, for the Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Trial Counsel, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

Attorney Mark E. Wagner charged a homeowner $1,000 to release his client's judgment lien (which had earlier been formally avoided in the homeowner's bankruptcy) on the homeowner's residence. For that, along with the respondent's false statement to the homeowner's new lender that the judgment lien had "apparently" not been avoided in bankruptcy, we conclude that the respondent engaged in professional misconduct.

This attorney disciplinary case is now before us for final determination upon the hearing officer's findings of fact and conclusions of law. Therein, the hearing officer determined that the Commission failed to demonstrate by the requisite standard of clear and convincing evidence [1] that the respondent violated Ind.Professional Conduct Rule 4.1(a) and 4.4,[2] as charged by the Commission in its verified complaint

---

(b) fail to disclose that which is required by law to be revealed.
Rule 4.4. Respect for Rights of Third Persons
In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of

for disciplinary action. Pursuant to Ind.Admission and Discipline Rule 23(15), the Commission has petitioned this Court for review of the hearing officer's report, therein challenging the hearing officer's findings with respect to the Prof.Cond.R. 4.4 charge.

Our jurisdiction in this case derives from the respondent's admission to the bar of this state in 1975. We now find that the respondent represented a bank in an action to collect a $9,328.19 judgment against a couple. The bank's judgment became a lien, junior to a first mortgage, against the couple's marital residence. Thereafter, the couple filed a petition for Chapter 7 bankruptcy. The petition listed the bank as a creditor for the judgment amount of $9,328.19. The couple later filed (and served upon the respondent as counsel for the bank) a "Motion to Avoid Judicial Lien," seeking to avoid the lien. The respondent filed a formal objection, therein asking for the opportunity to verify whether the couple's equity interest in the residence exceeded their allowable statutory exemptions. He later formally withdrew the objection. The bankruptcy court then issued notice, served upon the respondent, that the bank's judicial lien would be deemed avoided if no objection was filed within ten days. Ultimately, the court issued an order avoiding the lien and again served the respondent with a copy. That order provided, in pertinent part:

1. That on or about August 21, 1992, the above-mentioned lienholder did obtain a Judgment against the debtors ...

2. Said judgment was in the amount of $9,328.19.

Wherefore, it is hereby ordered, adjudged and decreed that the respondent's judicial lien is voided pursuant to 11 U.S.C. Section 522(f) to the extent the lien impairs an exemption to which the debtor is entitled to [sic].

obtaining evidence that violate the legal

The subsequent final discharge in bankruptcy had the effect of fully discharging the couple's personal liability to the bank.

Following their discharge in bankruptcy, the couple applied for a home equity loan through a mortgage company. A title company retained to perform a title search incident to the loan application noted in its report that the bank's judgment lien had not been formally released of record. The title company advised the mortgage company that formal release of the judgment lien was required before provision of title insurance for the transaction. In response to the mortgage company's insistence on the release of the bank's judgment lien prior to loan approval, the couple provided the mortgage company with a copy of the bankruptcy court's order avoiding the bank's lien. Meanwhile, the couple and an agent of the mortgage company contacted the respondent to ask that the bank execute a formal release of the judgment lien. By written response, the respondent advised the mortgage company that, "[t]he lien of the [bank] was apparently not avoided in [the couple's] bankruptcy even though it might have been," and that, "[the bank] will release the judicial lien it now apparently holds against the real estate ... upon receipt of the sum of $1,000.00." At the time of that communication, the respondent's file regarding the lien was in storage and the respondent did not specifically recall the circumstances of the case with regard to the lien avoidance. The couple opted to pay the $1,000 to secure the formal release of the judgment. The respondent retained for himself $333.33 of the payment as his contingent fee.

The Commission charged the respondent with violating Ind.Professional Conduct Rule 4.1(a) by knowingly making a false statement of material fact to the couple and the mortgage company's agent during the course of his representation of the bank, *to wit:* that the bank's judgment lien was "apparently not avoided" in bankruptcy. The respondent was also charged

rights of such a person.

with violating Prof.Cond.R. 4.4, which provides (in relevant part) that a lawyer while representing as client shall not use means that have no substantial purpose other than to burden a third person, by charging the couple $1,000 to formally release a judgment lien that had already been avoided in bankruptcy.

At hearing, the respondent elicited the testimony of two expert witnesses, lawyers with substantial experience in bankruptcy and insolvency law. In the opinion of those witnesses, a creditor who holds a judicial lien has no affirmative obligation to release of record a lien even though the debt has been discharged in bankruptcy and the lien avoided. They testified that because the language of a bankruptcy court's order avoiding a lien typically states that a given lien is avoided to the extent that it impairs the debtor's exemptions, it is the custom of practicing bankruptcy attorneys to require payment for releasing of record a lien where a title insurance company requires such a release in order to compensate the creditor for any remaining lien rights it might have through an incomplete avoidance of the lien. The creditor's interest in such a situation is a function of the value of the property in question, less mortgages. In this case, since there was nothing in the bankruptcy court's order indicating a finding by the court of the value of the couple's residence or their equity interest in it, the bank potentially had a surviving *in rem* interest in the judgment. Further, the witnesses testified that creditors often charge to release formally such liens of record because that action is one they have no affirmative obligation to undertake.

The hearing officer found that the Commission failed to establish misconduct as to either count. As for the Prof.Cond.R. 4.1(a) charge, the hearing officer found that the respondent's use of the word "apparently" in his missive to the couple indicated something less than total certainty, and, in any event, the statement was not "material" because the couple would have

had to obtain formal release of the judgment lien regardless of the respondent's statement. Recognizing the adversarial nature of debtor-creditor relations generally and that creditors have no affirmative legal duty to release judgments of record in bankruptcy situations, the hearing officer found further that there was no violation of Prof.Cond.R. 4.4, especially in light of the fact that creditors often demand consideration for formal release of judgment liens.

The Commission petitioned this Court for review of the hearing officer's findings relative to the Prof.Cond.R. 4.4 violation. In support of its argument that a Prof. Cond.R. 4.4 violation took place, the Commission argues that in this case, the respondent and his client obtained leave of the bankruptcy court to investigate the homeowner's equity interest in their residence. Following that investigation, the respondent withdrew his objection to the bankruptcy court's entry of a lien avoidance order. Later, when the homeowners and their new lender contacted the respondent for formal release of that lien, the respondent indicated that he would charge a fee for that service, although he had no recollection of the language of lien avoidance order or the value of the homeowner's equity interest. Despite his lack of recall, the respondent did not pull the file from storage to investigate these matters before charging the homeowners $1,000 formally to release the lien. Because his charging of the $1,000 had no demonstrable relation to the value of the releasing the lien (in the form of compensating the bank for any residual lien rights it might have had, for example), the Commission contends the respondent's actions had no purpose other than to burden the homeowners.

Where a party to a disciplinary action challenges the hearing officer's findings and conclusions, this Court's review of the matter is *de novo* in nature and involves a review of all matters presented. *Matter of McCord,* 722 N.E.2d 820 (Ind.2000). We

are not bound by the findings of the hearing officer, although they are accorded deference due to the hearing officer's unique opportunity for direct observation of witnesses. *Matter of Goebel,* 703 N.E.2d 1045 (Ind.1998).

In this particular case, we accept the hearing officer's findings, but disagree with his legal conclusions and conclude that the respondent violated both Prof. Cond.R. 4.1(a) and Prof.Cond.R. 4.4. With respect to the Prof.Cond.R. 4.1(a) charge, the uncontroverted facts are that after being asked by the couple's new lender to execute a release of the judgment lien, the respondent advised the couple and the new lender that the lien was "apparently" not avoided in bankruptcy even though it might have been. In fact, the lien had been avoided in bankruptcy after the respondent himself filed in that case both a formal objection prior to the avoidance (so that he could investigate the value of the couple's equity interest in the property) and, later, a formal motion to withdraw that objection. Had the respondent bothered to review the closed case file in his possession, those actions would have been apparent. Instead, the respondent told the couple and the lender that the lien had "apparently" not been avoided, just prior to informing them that formal release of the lien would requirement payment of $1,000. Violation of Prof.Cond.R. 4.1(a) requires a lawyer's "knowing" false statement of material fact or law to a third person. "Knowingly," for purposes of the *Rules of Professional Conduct,* denotes actual knowledge of the fact in question, but a person's knowledge may be inferred from circumstances. *Preamble, Rules of Professional Conduct.* Misrepresentation can occur by failure to act. *Comment* to Prof.Cond.R. 4.1. Another jurisdiction, applying a provision analogous to Prof. Cond.R. 4.1(a), found that "knowingly" encompasses conduct that is careless and recklessly negligent. *State ex rel. Nebraska State Bar Association v. Holscher,* 230 N.W.2d 75 (Neb.1975).

Despite the respondent's use of the qualifier "apparently," we find that the facts clearly and convincingly demonstrate a violation. The respondent himself prepared and filed the motion to withdraw his formal objection to the bankruptcy court's avoidance of the lien. The respondent was served a copy of the court's ultimate notice of avoidance. Those documents were contained in the respondent's own files, although the respondent failed to review those files. Instead, right before demanding $1,000 to release the lien, he stated that the lien was apparently not avoided. We find that the circumstances establish the respondent's knowledge of his false statement, or at least knowledge that he did not have any basis to represent that the lien was "apparently" still valid.

The respondent reminds us that the hearing officer found that the respondent's assertion that the lien had been avoided was not material because the couple would have paid the $1,000 to have the record released regardless of the respondent's statement. The respondent points out the couple's lender/title company had in its file a copy of the bankruptcy court's avoidance order, further underscoring the purported immateriality of the respondent's statement.

We disagree. Generally speaking, a "material" representation may be defined as one "relating to matter which is so substantial and important as to influence the party to whom it is made." Black's Law Dictionary, p. 880 (5th Ed.1979). The fact of the existence or nonexistence of the avoidance of the lien directly influences the availability of a formal release. There is no evidence indicating that the respondent knew the contents of the lender's/title company's files. For all he knew, he was advising an entity with no knowledge as to the lien's history. The respondent's assertion that the lien had not been avoided would tend to support his later charging a fee to release it.

Professional Conduct Rule 4.4 provides that, in representing a client, a lawyer

shall not use means that have no substantial purpose other than to burden a third person. The Commission charged that the respondent violated that rule by charging the couple $1,000 (and keeping 1/3 of that as his fee) to release the judgment lien. There is no evidence that the $1,000 fee bore any relation at all to any residual lien right the respondent's client may have had above the couple's equity exemption, and, in fact, the respondent's earlier withdrawal of his objection in bankruptcy court suggests that he concluded no such lien right existed. Further, the respondent provided no evidence to support the contention that the act of releasing the lien required $1,000 or even $333 worth of services. Viewed in its totality, the sequence of events depicts a lawyer who realized that a former bankruptcy debtor's unfortunate predicament provided an opportunity to extract a fee for a simple release of a lien that had already been avoided in bankruptcy, without regard to the underlying merits of the matter.

The respondent argues that he should not be punished just because the couple chose to use an "overly fastidious" title company and lender who, despite the avoidance of the lien in bankruptcy, required formal release of record. That argument is without merit. The requirements of a particular lender or title company do not change the fact that the respondent required the couple to pay a wholly arbitrary fee to release a debt that had been formally avoided. The respondent's characterization of the incident is that he "facilitated the [transaction] by contacting his principal to see what they [sic] would be willing to take for the release ... [h]e obeyed the wishes of his client within the boundaries of the law." But merely because the law does not require a creditor formally to release a fully satisfied or avoided lien does not permit a lawyer representing that creditor to extract a fee where no fee is due.

By this opinion today, we do not hold that a legal fee can never be collected for releasing a lien where that lien has been avoided in bankruptcy. A legal fee may be appropriate, for example, where the original creditor has some lien right above the allowed exemptions, where the cost of procuring the release justifies the fee, or where some other circumstance supports a fee.

Having found misconduct, we must now assess an appropriate discipline for it. In making this assessment, we are struck by the hearing officer's evaluation of the respondent's acts: "Simply stated, Respondent and his client found themselves in an advantageous situation vs. the [couple] and used that advantage for their financial betterment." Conversely, we are also cognizant of the hearing officer's finding that creditors have no affirmative legal duty to assist debtors by releasing judgments of record in these situations, and that the practice of charging a fee to do so, regardless of the underlying merits, is apparently a common one. Balancing these two factors, we conclude that a public reprimand is sufficient here to demonstrate to the respondent, the bar, and the public that purely opportunistic acts such as those taken by the respondent will not be tolerated.

Accordingly, the respondent, Mark E. Wagner, is hereby reprimanded and admonished for his misconduct.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.